WILLIAM POWELL, administrator,

*v.*

LILLIE E. YEARANCE et al.

[Decided October 7th, 1907.]

1. A bill was brought against the beneficiaries of a decedent to impress a trust on the devised property. A final decree was rendered against one defendant charging her share with the entire amount, but the decree did not dismiss the bill against any of the defendants, nor was there any reference therein to the rights of the other defendants. Upon appeal by the one defendant alone, the charge placed upon her share was diminished, the decree reversed and the lower court entered a decree on *remittitur.*—*Held,* that the decree on *remittitur* was final as to the character and extent of the appealing defendant's liability.

2. As to the defendants not parties to the appeal the decree on *remittitur* was only interlocutory.

3. A bill was brought against the beneficiaries of a decedent to impress a trust on the devised property, and a final decree was rendered against one defendant charging her share with the entire amount, but the decree did not dismiss the bill against any of the defendants, nor was there any reference in the decree to the rights of the other defendants.—*Held,* that the decree was not final in favor of the other defendants.

4. A second appeal will lie by defendants not parties to the first appeal to bring up proceedings subsequent to the mandate on *remittitur* to correct errors of the court in entering decree on the mandate.

5. While the general rule is that all parties to the record should be made parties to an appeal, the question is one for the final determination of the appellate court.

6. On a bill to impress a trust on devised property to the value of a house and lot which certain of the devisees promised decedent to convey to complainant, a decree of specific performance is not necessary, but a

decree charging the respective shares of the devisees for payment of the amounts respectively due may be made.

7. Where a trust is impressed upon devised property to enforce the performance of a promise to the testator subject to which it was intended to be devised, it is upon the ground of fraud in holding the property free from the effect of the promise, from which a trust *ex maleficio* arises.

8. Where a promise, on the faith of which an estate is devised to persons severally, is made by one of the devisees, the other beneficiaries do not hold their shares subject to the promise, as otherwise one beneficiary would be enabled thereby to deprive the rest of their benefit by setting up a secret trust.

9. The statutes of frauds and of wills are operative in equity, and relief from them, where property subject to a trust is retained free from the trust, is upon the principle that statutes to prevent frauds are not to be used as instruments of fraud.

On final hearing on pleadings and proofs.

The original bill in this case was filed on November 22d, 1893, by Mrs. Powell against the executors of the will of George D. Randall, and also against his children, Mrs. Yearance, Edith and Frederick L., devisees and legatees of his residuary estate under his will. By an amendment to the bill, filed June 15th, 1894, the three infant children of Frederick L. Randall, who had also an interest in the residuary estate, were made parties. The general object of the bill was to impress a trust in favor of Mrs. Powell, on the property left by Mr. Randall to his children and grandchildren, by reason of a parol promise alleged to have been made by two of the three children (Mrs. Yearance and Edith) by reason of which promise the testator was induced to execute his will without inserting a provision in favor of the complainant, Mrs. Powell, by which she should receive (on certain conditions) $4,500 from the estate. Payment of the $4,500 as a charge upon the entire estate is sought.

The will, after directing payment of debts, and a specific devise of a house in Clinton avenue (or the proceeds of its sale) to his two daughters, devises the remainder of testator's estate as follows: The income of one-third to his daughter Mrs. Yearance, during her life, and the income of one-third to his son, Frederick, during his life, while the remaining one-third is de-

vised and bequeathed absolutely to his daughter Edith, on reaching twenty-four years of age, the income to be paid to her by the executors until that time.   On Mrs. Yearance's death leaving issue, the one-third vested in her for life goes to her children absolutely, and on her death without issue, one-half of this third is to go to the daughter Edith, absolutely, at twenty-four, the remainder to the children of Frederick equally, payable to them severally on reaching twenty-four.   No express devise or bequest is made of the principal of the one-third of the estate vested in Frederick for life, and as to this the testator seems to have died intestate.

The defendants Mrs. Yearance and Edith answered, denying the promise to the testator, alleged to have been made by them, and the executors answered separately, putting complainant to proof of her case.   The defendants Frederick L. Randall and his three infant children were served with process, but no appearance or answer was filed by or on behalf of either of them, nor was any decree *pro confesso* taken against them at the time of the hearing in June, 1896, before Vice-Chancellor Reed, on the amended bill and answer.   On this hearing the executors and the answering defendants alone appeared to defend.   Upon the proofs submitted the vice-chancellor found that the alleged promise was established as against the defendant Mrs. Yearance, and on December 22d, 1896, a final decree was advised, reciting that complainant was entitled to the relief sought by her bill against Mrs. Yearance, and directing that Mrs. Yearance (within a time fixed) convey to the complainant a house and lot described in the bill or that in default, she pay complainant the whole amount, $4,500, and that until so paid the executors pay to complainant any moneys Mrs. Yearance was entitled to in the estate towards payment until fully satisfied.   Decision as to the question of interest on the $4,500 was reserved.

The learned vice-chancellor in his conclusions stated that there was no proof of any promise, valid or binding, on the daughter Edith, and that no decree could be made against her share of the estate.   The final decree, however, did not dismiss the bill either against her or against any of the other defendants, nor was there in the decree any reference to their rights.   Mrs. Year-

ance appealed from this final decree, and on the appeal the complainant as the sole respondent, and Mrs. Yearance as the sole appellant, were the only parties. Mrs. Powell did not appeal from the decree because of failure to hold the other defendants. On this appeal the court of errors and appeals, after full examination of the proofs—*Yearance* v. *Powell; 55 N. J. Eq. (10 Dick.) 577 (1897)*—also reached the conclusion that Mrs. Powell was entitled to a decree against Mrs. Yearance, charging her share of the estate, but only to the extent of her share of the $4,500 instead of the whole amount, and in so far as it charged her with more, the decree was said to be wrong.· The court of errors and appeals, however, did not itself direct the form of decree to be drawn, and on June 28th, 1897, a decree was made on appeal, reversing the decree in chancery and remitting the record and proceedings to this court "to the end that a decree may be made by said court in conformity with the opinion of this court." In reference to complainant's right to compel payment of the residue of the bequest from those entitled to the other shares, the opinion of the court by Mr. Justice Collins says (*55 N. J. Eq. (10 Dick.) 580*), that as the devisees of these shares were not before the court, it was precluded from examining and determining the question. The opinion, however, said upon this point, that the vice-chancellor in his opinion assumed that there could be no claim against the other devisees in the absence of promises by them respectively, but that there were decisions holding otherwise in cases like the present, and that they proceeded on the theory that one of several devisees of a class represents all, and that where a testator executes his will on the faith of a promise that some trust will be performed, made by one of the class on behalf of all, it is fraud for the others to claim the devise without showing the burden. And it was further declared in the opinion that should the court of chancery adhere to the view of the vice-chancellor, Mrs. Powell might present the question by appeal. The proceedings in this court subsequent to the *remittitur* were as follows: On February 15th, 1899, Mrs. Frederick L. Randall was appointed guardian ad litem for her children, the three infant defendants. Mrs. Powell died in January, 1901, and the suit was revived in the name of her husband

as her administrator. · In June, 1901,·a decree *pro confesso·* was taken against the defendant Frederick L. Randall, and on ·January 18th, 1904, after notice to all the defendants, the decree on *remittitur·* was settled. This final decree on *remittitur*, entered on January 18th, 1904, recited that in conformity with and obedience to the decree of the court of errors and appeals, it was decreed that Mrs. Yearance pay to the complainant, as adminis-, trator of Mrs. Powell, within twenty days, the sum of $1,500, with interest from March 13th, 1899, and costs, and that, until said amount was fully paid and satisfied, the executors of Mr. Randall pay to complainant all moneys which Mrs. Yearance might be entitled in the estate. The decree further recited that the court of errors and appeals was of opinion that there might be an equal liability on the part of the other devisees who were parties defendant to the suit, but that this question was not determined, because said parties defendant were not parties to the appeal, and that a decree *pro confesso* had been taken against Frederick Randall, one of the defendants, and then ordered that the cause be set down for hearing and argument upon the pleadings and proofs as already taken and filed in the cause, and on such further proofs as the guardian *ad litem* of the infant defendants might offer, "to the end that it may be determined if there be any liability to said complainant on the part of the defendants, the children and grandchildren of the testator (other than Mrs. Yearance, naming them), or any of them, and if·there be such liability, what and how much and how chargeable, payable and distributable between said defendants, and that such order or decree may be made in the premises as may be conformable to equity and good conscience." No appeal was taken from this decree as not made in conformity with the opinion of the court of errors and appeals, but such objection is now made by the defendants upon the hearing before me, pursuant to the final decree. The further objection is made that the first final decree entered in June, 1896, directing Mrs. Yearance to pay the entire amount claimed, and, failing to direct any payment by any other defendant, is a final decree adjudicating in ·favor of the other defendants the claim now made.

The other defences are raised, viz.: *First,* that under estab-

lished practice no decree at all can be made on the proofs other than a decree against Mrs. Yearance for specific performance of a contract to convey the Brunswick street lot, and *second,* that the proofs taken fail to establish any legal promise or liability on the part of the defendants, other than Mrs. Yearance; the proofs being purely oral and therefore of no effect or validity under the statute of frauds and the statute relating to wills. No proofs have been taken on this hearing other than those taken on the original hearing before Vice-Chancellor Reed, and considered by him and by the court of errors and appeals. On behalf of Mrs. Yearance it was suggested at the argument that the decree on *remittitur* was inequitable as against her, in that it directed the payment of the entire sum of $1,500 and interest out of the income payable to her instead of out of the principal invested for her benefit for life.

*Mr. John R. Hardin,* for the complainant.

*Mr. Francis Child,* for the defendants.

EMERY, V. C. (after statement).

On the questions argued or stated at the hearing before me, I reach the following conclusions:

*First.* As to the defendant Mrs. Yearance, the decree entered on *remittitur* in this case is, for the purposes of this hearing, a final decree as to the character and extent of her liability, and of the liability or charge upon the share of, or interest in, the Randall estate to which she is entitled.

*Second.* As to the defendants other than Mrs. Yearance, the original final decree of the court of chancery, directing that the whole amount claimed by the complainant be charged upon the share of the defendant Yearance in the Randall estate, is not a final adjudication in favor of the defendants other than Mrs. Yearance, whose shares in the estate were sought to be charged. There was no dismissal of the bill as against these defendants other than Mrs. Yearance, claiming interests in the Randall estate, nor was there any decree discharging the executors from any payments other than out of Mrs. Yearance's share. In the

absence ·of any express adjudication or decree in favor of the other defendants by dismissal of the bill as to them, or otherwise, any discharge of these defendants from further liability on the bill could only be indirect or by way of inference from the decree, and was subject to any change or modification which might be made on appeal from the decree.

As to the modifications of the decree which were made by the court of errors and appeals, I must take the final decree entered January 18th, 1904, on *remittitur,* on notice to all parties, as conclusive for the purposes of this hearing. Inasmuch as the defendants other than Mrs. Yearance were not made parties to the appeal and were not heard in that court as to the reversal of the decree in chancery, or the form of decree to be entered on appeal, the decree of January 18th, 1904, is probably, as to them, only an interlocutory decree made before final hearing and in the course of this suit, and as such, under our practice declared to be settled in *Pennington* v. *Todd, 47 N. J. Eq. (2 Dick.) 569 (Court·of Errors and Appeals, 1890),* may be subject, after final decree on this hearing, to review by the court of errors and appeals, in respect to its being a proper construction of its opinion. Even as to parties to the appeal and bound by the decree on appeal, the rule is that a second appeal will lie to bring up pro-- ceedings subsequent to the mandate on *remittitur,* and this may involve the question whether the decree follows the direction of the appellate court. *2 Fost. Fed. Prac. (3d ed.)* § *519,* citing *interal Stewart* v. *Salamon, 97 U. S. 361 (1878),* where Chief- Justice Waite says on the subject: "An appeal will not be enter- tained by this court from a decree entered in the circuit or other inferior court, in exact accordance with our mandate upon a previous appeal. Such a decree when entered is, in effect, our decree, and the appeal would be taken from ourselves to our- selves. If such an appeal is taken, however, we will, upon the application of the appellee, examine the decree entered, and, if it conforms to the mandate, dismiss the case, with costs. If it does not, the case will be remanded with appropriate directions for the correction of the error." This review on second appeal for the purpose of correcting any error of the subordinate court in enter- ing the decree on the mandate, is specially necessary in cases

like the present, where the *remittitur* on appeal did not expressly state the terms of the decree, but directed that it be entered in conformity with the opinion filed. There can be no question, I think, that the defendants not parties to the appeal, may, by appeal, question the correctness of the decree entered on *remittitur*, if it is claimed to affect them. The general rule is that all parties to the record who may be affected by the reversal of a decree should be made parties to the appeal. *Davis* v. *Mercantile Trust Co., 152 U. S. 590, 593 (1893)*, and I think that if application had been made, the court of errors and appeals might have required the defendants, other than Mrs. Yearance, to be made parties, for the reason that as the decree directed that she should pay the whole amount originally claimed by the complainant from all defendants, and the complainant, who was entitled to but one payment, did not appeal from that decree, their interests would or might be affected by any reversal or modification which would leave the complainant free to further pursue them, as she has now done. But the question of necessary parties on any appeal is one for the final judgment of the court of errors and appeals, and the only practical effect of a decision in appeal, without all the parties interested being parties to the appeal, would seem to be that on a subsequent appeal by persons not parties to the previous appeal, the questions decided in the appellate court may be open for a second argument. On this branch of the case I conclude, therefore, that as to the defendants other than Mrs. Yearance, the question whether their shares or interest in the Randall estate are charged with the payment of the sum claimed by complainant (and not charged on the Mrs. Yearance share), is still open for final determination, and that under the decree of January 18th, 1904, the proofs previously taken are to be considered.

*Third.* The objection that, upon the proofs, no decree can be made other than a decree for specific performance against Mrs. Yearance, of the Brunswick street lot, and that this is the only decree to which complainant is entitled on these proofs, must be overruled, so far as it is relied on as a legal or formal objection to a decree other than one of specific performance on such proofs. This is upon the ground that the decision on appeal in *Powell*

v. *Yearance* has the force of a precedent, which settles as a matter of law and practice, that on a bill of this character, supported by these proofs, a decree charging the respective shares of the legatees in the hands of the executors, for payment of the amounts respectively due, can be made. In reference to this objection, it may be further observed that the bill specifically prayed such payment and did not pray specific performance; that the decree for conveyance originally directed by the court of chancery practically made the conveyance an optional method of payment and was so construed by the court of errors and appeals, and that the decree on *remittitur* (by which I am concluded) directed payment of a proportionate amount, without any option for conveyance, this feature of the original decree being omitted.

*Fourth.* On the facts of the case appearing by the proofs, I reach the same conclusions as those arrived at by Vice-Chancellor Reed, and by the unanimous opinion of the court of errors and appeals, viz., that the testator desired to alter his will which had been prepared for signing, so as to devise to Mrs. Powell a house which he then supposed he owned as part of his estate, and on being informed that this could not be done, because Mrs. Yearance owned the house, he then proposed to change his will so as to give Mrs. Powell the sum of $4,500, which he then fixed as the value of the house; that Mrs. Yearance, with the object of inducing him to sign the will as drawn, and not to delay signing for the purpose of making the change, assured him that this would be all right, and I find that the will was signed as drawn on the faith of this assurance. This assurance was not made in the presence of any of the other devisees, and their first knowledge or information of it was after testator's death. This assurance, as I further find, was given not with any object or purpose of taking any future advantage, but, solely for the reason that Mrs. Yearance and all the parties then present believed the physical condition of the testator to be such as to render dangerous any delay in the execution of the will for the purpose of making the change.

*Fifth.* That a promise or assurance thus made, impressed on the share of the estate coming to Mrs. Yearance, a trust for the

purpose of carrying out the promise by the payment of her proportionate share, was finally decided on the appeal in this cause, and settled as the law of the state. The question left open and undecided is, whether as to the other devisees and legatees entitled to shares in the estate the promise of Mrs. Yearance, one of the beneficiaries, and the testator's reliance on it, by leaving out of his will a direction for payment of the $4,500, to which all of the shares would have been subsequent or subject, impresses a trust upon the shares of the estate other than those of Mrs. Yearance. Trust, in cases of this character, are impressed on the ground of fraud, actual or constructive, and the basis or ground upon which fraud is imputed is that of holding the estate of testator against conscience. It is not based necessarily on any imputation of fraud, or intention to defraud, at the time of making the promise, but of afterwards holding or attempting to hold the estate, as if the promise, on which the estate was received in its original condition, had not been made. The fraud consists in holding, or attempting to hold, the estate free from the effect or obligation of a promise, subject to which it was intended to be devised and received and which it is obligatory in conscience to carry out. Where the estate or interest therein is thus received by the person who made the promise, the attempt to hold the estate without performing the promise is an actual fraud, for the reason that the recipient having actually made the promise, knows personally of the obligation, and is guilty of actual fraud in holding, or attempting to hold, the estate without performing the promise, so far as his interest in the estate extends. As to such promisor, it is clearly not a question of modifying or cutting down plain and ambiguous devises in a will, by parol evidence or unattested papers, in violation of the statute of frauds or of wills, for the devise to the promisor is not modified, but he is dealt with as a holder by fraud of property under the will, and a trust *ex maleficio* is raised from these facts. *Williams* v. *Vreeland, 32 N. J. Eq. (5 Stew.) 136 (Chancellor Runyon, 1880)*; *In re Will of O'Hara, 95 N. Y. 403 (1884)*, and cases cited (at pp. 413, 414). And where the promise or assurance, on the faith of which an estate or interest is devised to two or more persons as joint tenants, is made by one of the joint tenants, the trust is

enforced against all, on the ground that in relation to an estate thus jointly devised the promise of one joint tenant binds all equally. *In re Will of O'Hara, supra* (at *p. 413*), and cases there cited. As all the joint tenants must hold equal and the same estates, and the estate of all the joint tenants was devised on the promise of one, and all got their rights through the promise of one, it must follow that the joint estate held equally by all is affected by the promise of one, and the retention of the estate on their part, after information or proof of the fraud of their joint tenant, becomes fraud on their part.

But where the devise or bequest is to several persons, either severally or as tenants in common and not as joint tenants, and some of the tenants have had nothing to do with the making of the will, other and different considerations arise, and a distinction has been made. As to such devisees or legatees receiving estates by will, the case involves the application both of the statute of wills and the statute of frauds, and the decisions seem to be almost uniform that where the interest claimed to be charged is devised or bequeathed in severalty or in common, the beneficiary does not in equity hold the estate as bound by the obligations or assurances to the testator of another beneficiary or tenant in common. It is considered that to give effect to such assurances would contravene the statute of wills and would entitle one beneficiary to deprive the rest of their benefits by setting up a secret trust. *Tee* v. *Ferris, 2 Kay & J. 357 (Eng. Ch.) (Vice-Chancellor Wood, 1856)* ; *Robotham* v. *Dunnett, L. R. 8 Ch. Div. 430 (Vice-Chancellor Malins, 1878)* ; *In re Will of O'Hara, supra.*

Trusts based on the actual fraudulent conduct of a person in the procuring of a devise either to himself alone or to himself and others, stand upon a different ground, and the settled rule in such cases is that the interests thus obtained by a third person by means of the fraud of another cannot be retained. *Bridgeman* v. *Green, 2 Ves. 627 (Lord-Chancellor Hardwicke),* and *Huguenin* v. *Baseley, 14 Ves. 273 (Lord Eldon, 1807),* in which interests or estates in remainder were granted or devised to members of the family of the person guilty of fraud in procuring the estate, are the leading cases on this point.

In *Hooker* v. *Axford, 33 Mich. 453* (*1875*.), the devise by the testatrix was to two persons, an attorney and a third person named by the attorney, upon a secret trust for the husband of the testatrix. It does not appear by the report whether the estate was held in common or in joint tenancy, but it was satisfactorily proved that the devisees were intended to be trustees, and that the third person had recognized the trust. In this case the one-half of the legal title devised to the third person was held, under the facts proved, to be subject to the trust, in favor of the husband, although this grantee had nothing to do with procuring the devise, but this devisee was apparently a stranger to the testatrix, and the case cannot be considered as authority for imposing a trust upon the shares of a testator's estate given in severalty to his children, by reason of promises of another child, of which they had no knowledge.

The statutes of frauds and of wills are operative in equity, and the relief from them, in cases of this general character, is upon the equitable principle, that statutes to prevent frauds are not to be used as instruments of fraud, and where the grant of the estate was not procured by actual fraud on the testator, the only basis of imputing fraud is in the holding of an estate under the will, after proof that the testator gave the estate, intending or supposing that it would be charged with a burden or trust. But the statute of wills covers such cases by expressly defining the character of proofs required.

Treating the question as an open one on this hearing, I should advise therefore that the proof of the trust alleged is not made out against the defendants other than Mrs. Yearance, by competent evidence. But the question as to these defendants seems to be controlled in this court by the opinion of Vice-Chancellor Reed on the original hearing. In his opinion he holds the shares of the other tenants in common, Frederick and Edith, not chargeable with any trust, because there was not, on the part of either, toward the testator, any promise or conduct on which he relied in leaving the will unaltered.

On the point of this necessity of personal fraud and that they were not bound by Mrs. Yearance's fraud, this decision is a precedent. The suggestion of the court of errors and appeals in

reference to their liability entitled the complainant to a further consideration of the question in this court, and especially as the authorities were not specifically referred to in the opinion in either court. On such further consideration, I follow the decision of Vice-Chancellor Reed as a precedent controlling my decision, and based on sound reason and equity, and will advise the dismissal of the bill as to the defendant devisees other than Mrs. Yearance and the executors.