THOMAS ET AL. *v.* BRIGGS.

[No. 14,593.   Filed March 15, 1934.]

*Otis Cook, Charles H. Bedwell,* and *John O. Piety,* for appellants.

*Abraham T. Miller, Wallace & Randel,* and *Charles D. Hunt,* for appellee.

DUDINE, J.—This was an action instituted by appellee against appellants, to establish a constructive trust, of which appellee would be declared the beneficiary of certain property owned by one Elva Wallace Thomas at the time of her death, she having died intestate, leaving appellant, Edgar Thomas, her sole heir at law.

The complaint was in one paragraph. Appellants filed separate demurrers to the complaint, all of which were overruled, whereupon appellants filed an answer of general denial, and an answer purporting to allege an estoppel. On motion of the appellee said second paragraph of answer was stricken.

The cause was submitted to the court for trial on the issue formed by the complaint and answer in general denial, and the court found for the plaintiff and rendered judgment establishing the trust prayed for.

Appellants seasonably filed a motion for a new trial, assigning as grounds therefor that: (1) The finding is not sustained by sufficient evidence; (2) the decision is not sustained by sufficient evidence; (3) the finding is contrary to law; (4) the decision is contrary to law, which motion was overruled, and this appeal was perfected.

The errors relied upon for reversal and discussed in appellant's brief are: (1) Error in overruling each of said demurrers to the complaint; (2) error in striking out appellant's second paragraph of answer; (3) error in overruling the motion for new trial.

The pertinent parts of the complaint are as follows: "Plaintiff complains of the defendant and says that the plaintiff is, and was, the niece of Elva Wallace Thomas, deceased, and who departed this life on the 20th day of April, 1930 . . . that her said aunt married the defendant, Edgar Thomas, on the 19th day of June, 1929, and from that day until the day of her death lived with the said husband, Edgar Thomas, the defendant herein.

Plaintiff further says that shortly after her said aunt married the defendant, Edgar Thomas, her said aunt and the defendant, Edgar Thomas, visited this plaintiff at her home, and while visiting with plaintiff at said time, said aunt, in the presence of the defendant, Edgar Thomas, told this plaintiff that she was going to provide for the plaintiff in her will so plaintiff would get a part of her estate. Plaintiff further says that on Saturday, April 12, 1930, the plaintiff's said aunt, Elva Wallace Thomas, was 71 years of age and was of sound and disposing mind and memory, and had mental capacity sufficient to know and understand the value of her property, the number and names of the persons who were the natural objects of her bounty, and did realize the uncertainty of life of a person of her age and condition; that while in said condition, on said day and date, plaintiff's said aunt did prepare, write and sign, in her handwriting, her last will and testament, which last will and testament was and is in the words and figures following, to wit:

April 12th, 1930.

"My wish is that Beatrice Briggs, my niece, in case of my death, should have my large mirror—8 foot—and my diamonds and brass corner piece, and any lamps she might wish; also sewing cabinet and buffet mirror. And that Inex Harvey, a niece, be given my cameo pin and piano. Charles Nowlin and family, a nephew, $100.00 Dollars, in cash, and R. W. Mellish, a nephew, be given $1,000.00 in cash, and the note for $300.00 which he borrowed be considered paid. Also, that all my debts be paid and $500.00 be paid for monument. The remainder of my personal property and real estate be sold at its value and equally divided between my niece, Beatrice Briggs, and my husband, Edgar Thomas.

"I also desire Edgar Thomas, my husband, to live in my residence, 228 South 5th Street, for one year,

provided it is not sold, and have the income from same, but he must pay the taxes and insurance for that period of time.

"I also bequeath to my sisters, Mrs. Helen Woodruff and Mrs. Hariet Bullock, each $5.00, also $5.00 to a nephew, Everett Nowlin.

"This is my last statement at noon April 12th, 1930.
                    Mrs. Elva Wallace Thomas,
                    Clara Owens,
                    Lora Thomas.

"That the said Elva Wallace Thomas was, on said 12th day of April, 1930, able to be up and around her home and able to help with her housework; that on the night of April 12, 1930, the said Elva Wallace Thomas told the defendant, Edgar Thomas, about her said will.

"Plaintiff further says that on Monday, April 14, 1930, plaintiff's said aunt, Elva Wallace Thomas, was then confined to her bed because of illness, and on said day asked her husband, the defendant Edgar Thomas herein, to have said will witnessed and finished, and the defendant, Edgar Thomas, at said time, promised plaintiff's said aunt that he would do so.

"Plaintiff further says that on Tuesday and Wednesday, the 15th and 16th days of April, 1930, plaintiff's said aunt, who was still confined to her bed on account of illness, but still retained her mental faculties, asked her said husband, the defendant, Edgar Thomas, several times each day to have her said will witnessed and finished, and each time the said defendant, Edgar Thomas, would and did promise plaintiff's said aunt that he would have her said will witnessed and finished, and during all of said time the defendant's said wife, having confidence in and trusting her said husband and believing he would fulfill his promise to have her will witnessed and finished, depended and relied upon her said

husband having her said will finished and duly executed. That said defendant, Edgar Thomas, failed and neglected to procure the witnessing of said will on each of said dates, and fraudulently failed to carry out his promise to his said wife.

"Plaintiff further says that the defendant, Edgar Thomas, had full knowledge of the terms and conditions of said will from and after Sunday, April 13, 1930, and knew the condition of his said wife's health during all of the time that he promised her that he would have her will witnessed and executed.

"Plaintiff further says that the illness of her said aunt, Elva Wallace Thomas, became more severe on the night of April 16, 1930, and from said time until her death she was unable to converse with anyone; that she continued to grow worse, and on Saturday, April 19, 1930, she was in a stupor a part of the time; that in the afternoon of said day the defendant had said will witnessed by Clara Owens and Lora Thomas, and the said Elva Wallace Thomas died on the 20th day of April, 1930.

"Plaintiff further says that after her said aunt, Elva Wallace Thomas, prepared said will on the 12th day of April, 1930, up to and until she was unable to talk, she was asking and requesting her said husband to have said will duly executed, and was desirous that this plaintiff would receive a part of her estate, as provided in said will.

"Plaintiff further says that after plaintiff's said aunt died, the said defendant, Edgar Thomas, cut the names of the said witnesses off of said will of the said Elva Wallace Thomas, after which he went to said witnesses and told them not to say anything about said will; that they would not lose anything if they did not tell anyone about said will; that said defendant, Edgar Thomas,

also informed said witnesses that he would treat this plaintiff right if said will was not mentioned by said witnesses.

"Plaintiff further says that the said defendant, Edgar Thomas, knew at all times that his wife was asking him to get her said will duly witnessed and executed, and he was promising her that he would have said will duly executed; that if his said wife died intestate that he would inherit all of her property, both real and personal.

"Plaintiff further says that the defendant, Edgar Thomas, failed and refused to tender said will for probate and was appointed and qualified as administrator of said estate on the 24th day of April, 1930, and is still acting as administrator of said estate. That thereafter, to wit, on or about the 19th day of May, 1930, this plaintiff filed a petition in the Vigo Circuit Court, Probate Division, asking that said defendant, Edgar Thomas, produce said will in court; that the court issued a citation requiring the said defendant, Edgar Thomas, to produce said will, and on May 23, 1930, said defendant, Edgar Thomas, did produce said will in open court and filed his objections to the probate thereof. That said plaintiff duly offered said will for probate, with proof of its due execution. That thereafter, to wit, on June 10, 1930, the defendant, Edgar Thomas, filed his complaint to resist the probate of said will; that upon the trial of said objections to the probate of said will, . . . the said will was refused of probate. . . .

"Plaintiff further alleges that by reason of the aforesaid acts of the defendant, Edgar Thomas, as herein alleged, in fraudulently failing to have said will duly executed, and in preventing his said wife from having the said will duly executed, by reason of her confidence in him and relying upon him carrying out his said

promises, the said Edgar Thomas now holds in trust for this plaintiff all that part of the real estate that would have come to this plaintiff by said will had said will been duly executed.

"Plaintiff further says that because of the acts of the said defendant, Edgar Thomas, as alleged herein, the said Edgar Thomas, as administrator of the estate of Elva Wallace Thomas, deceased, now holds in trust for this plaintiff all that part of the personal property of the said Elva Wallace Thomas, deceased, that this plaintiff would have received had said will been duly executed. . . ."

The separate demurrers to the complaint presented the same question of law. In this appeal appellants present the same contentions in support of each of the assigned errors based on the overruling of each of said demurrers.

Appellants contend each of the demurrers should have been sustained because: (1) The complaint did not allege that Edgar Thomas prevented his deceased wife from making a valid will; (2) it did not allege that Edgar Thomas had prevented her from having the will properly witnessed; (3) it did not allege facts showing that the will was refused of probate because of any act of Edgar Thomas; (4) it did not allege facts showing that Edgar Thomas was guilty of fraud, actual or constructive, which prevented his deceased wife from executing a valid will. We must determine whether it was necessary to allege any of said facts. We will discuss said fourth contention first.

The gist of every constructive trust is fraud. *Huffman* v. *Huffman* (1905), 35 Ind. App. 643, 73 N. E. 1096; See also, *Betsner* v. *Betsner* (1925), 84 Ind. App. 319, 327, 151 N. E. 343.

In constructive trust cases where the alleged trustee acquired the property by making a promise to convey

the property to the alleged beneficiary after the death of the deceased, and he failed to do so, it has been held that fraud lies in the failure to carry out the agreement. Perry on Trusts, 7th Ed. Sec. 181a; See *Ransdel* v. *Moore* (1899), 153 Ind. 393, 408, 53 N. E. 767; Note 66 A. L. R. 165, and other authorities cited. "The theory seems to be that the parol agreement which is relied upon by the testator or ancestor imposes a conscientious obligation upon the promissor, a violation of which for his advantage is such fraud that equity will make him a constructive trustee for the intended beneficiary in order to prevent the provisions of the statute of frauds or the statute of wills from being made an instrument of fraud." Perry on Trusts, 7th Ed. Sec. 181a, *supra*. In *Powell* v. *Yearance* (1907), 73 N. J. Eq. 117, 67 Atl. 892, it is said that such a trust "is not based necessarily on any imputation of fraud or intention to defraud, at the time of making the promise, but of afterwards holding or attempting to hold, the estate, as if the promise, on which the estate was received in its original condition, had not been made. The fraud consists in holding, or attempting to hold, the estate free from the effect or obligation of a promise subject to which it was intended to be devised and received, and which it is obligatory in conscience to carry out."

We recognize the distinction that in that case the alleged trustee promised to convey property according to the testator's instructions, after his death, and failed to do so, while in the instant case there is no such promise, but the fraud relied upon in that case and in many similar cases, where constructive trusts were declared, was not fraud in the promise, but fraud which arose after the promise was made or even after the testator's death. We know of no reason why the rule that a constructive trust "is not based necessarily on any imputa-

tion of fraud or intention to defraud, at the time of making the promise" applied in *Powell* v. *Yearance, supra,* is not applicable in the instant case. Therefore, appellants' said fourth contention must fail.

In Pomeroy's Equity Jurisprudence, 3rd Ed., Sec. 155, we find this statement, "If one party obtains the legal title to property, not only by fraud or by violation of confidence or of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, . . ." Our Supreme Court has said that that has been the doctrine of the English courts for more than two hundred years. *Ransdel* v. *Moore, supra.*

Our Supreme Court, in *Ransdel* v. *Moore, supra,* declared the following rule by which it can be determined whether a certain set of facts constitutes a constructive trust, to wit, "when an heir or devisee in a will prevents the testator from providing for one for whom he would have provided but for the interference of the heir or devisee, such heir or devisee will be deemed a trustee, by operation of law, of the property, real or personal, received by him from the testator's estate, to the amount or extent that the defrauded party would have received had not the intention of the deceased been interfered with." We have not found a case wherein our Supreme Court has abrogated or changed this rule.

"Interference" means to enter into or take part in the concern of others. (Webster's New Int. Dictionary.) Appellant Edgar Thomas' failure to keep his agreement to have the will witnessed as alleged in the complaint was an "interference" which prevented decedent from

providing for appellee, as decedent would have provided, but for such interference.

Our Supreme Court said in *Caldwell* v. *Ulsh* (1915), 184 Ind. 725, 730, 112 N. E. 518, ". . . one who obtains the legal title to property by arts or acts, or through circumvention or imposition, or by virtue of a confidential relation and influence arising fròm it, under such circumstances that he ought not, in good conscience, to hold and enjoy the beneficial interest therein, is converted into a trustee, and ordered so to execute the trust as to protect or indemnify the party defrauded, and at the same time promote fair dealing and common honesty in the interest of society and the state."

This court said in *Huffman* v. *Huffman, supra,* "one who obtains the legal title to property . . . by virute of a confidential relation and influence arising from it, under such circumstances that he ought not, in good conscience to hold and enjoy the beneficial interest therein, is converted into a trustee. . . ."

Thus it will be seen the rule applied by our Supreme Court and this court to determine whether, under given circumstances, a constructive trust will be declared, is not an arbitrary rule with fixed requirements, but is a rule which is based solely on justice and equity. The essential test is whether or not, under the proposed circumstances, the alleged trustee can in good conscience retain the property.

Appellants, in their oral argument and in their brief, contended that constructive trusts are established only in cases where the alleged trustee has promised to transfer property after decedent's death to the beneficiary of such trust, and the trustee fails to do so. We have not found any case wherein a constructive trust was declared, which was not a case of the type referred to. But the rules of law defining constructive trusts, which we have set forth herein, are

broad enough to include the instant case, and do not recognize the limitation contended for by appellants.

We think the complaint in the instant case alleges facts which clearly show that the alleged trustee cannot in good conscience retain the property claimed by appellee, and therefore hold that appellants' said first, second, and third contentions must fail.

Appellants cite *Ransdel* v. *Moore, supra,* in support of their said contentions. We cannot see anything in said case which supports said contentions. So much of said opinion as refers to the demurrer to the fifth paragraph of complaint in said cause is in harmony with our holding herein, and the balance of said opinion is not applicable to the instant case. Appellants also cite *Ransdel* v. *Moore* (1901), 156 Ind. 568, 59 N. E. 936, which was a second appeal of said case. The sole question before the Supreme Court in said second appeal was whether or not the facts found by the trial court were sufficient to support the decision upon which the judgment was based. That opinion has no bearing on the instant case.

Appellants present a further contention with reference to the complaint being defective, which contention was not presented by the demurrer or any memorandum thereto; since the contention was not presented by the demurrer or memorandum thereto, it will be deemed by us that appellants have waived the right to present such contention. Sec. 362, subd. 6, Burns R. S. 1926. *Amsbury* v. *Harper* (1927), 87 Ind. App. 119, 157 N. E. 292.

Under their third assigned error appellants present several questions of law which they presented under their first assigned error and which questions have been discussed in this opinion.

The only contention presented under said third assigned error which was not presented under the first

assigned error, and has not been discussed in this opinion, is that "before a court of equity is warranted in making a decree (establishing a constructive trust) the evidence must be clear, unequivocal, and decisive. The general rule that the finding, where there is any evidence reasonably tending to support it, will not be disturbed on appeal has no application in a case to establish a constructive trust." Appellants cite *Hayden* v. *Dannenberg et al.* (1914), 42 Okla. 776, 143 Pac. 859, Ann. Cas. 1916D, p. 1194.

It is not necessary that we determine whether said contention is well founded in law because we have examined the evidence as shown in appellants' brief, and find that appellee's evidence followed the allegations of the complaint, that each material allegation of the complaint set forth in this opinion was supported by clear and positive evidence presented on behalf of appellee.

The evidence did clearly, unequivocally and decisively establish and prove the material allegations of the complaint.

Appellant's second paragraph of answer alleged that appellee had attempted to have decedent's will probated, and failed; that therefore appellee was estopped from suing on the theory set forth in the complaint.

Appellants contend that "appellee, at the time she filed her petition to probate decedent's will, was possessed of two remedies, one on the theory that decedent left a valid will, and the other on the theory that she did not leave a valid will . . . and appellee having prosecuted her petition to probate decedent's last will to final judgment, she is bound by her election and is estopped from prosecuting the present action."

"Election of remedies is the act of choosing between different modes of procedure and relief allowed by law on the same state of facts, which modes may be termed co-existing remedies." 7 Encycl. Pl. and Prac. 361.

"The doctrine of election of remedies is of equitable origin. . . . It does not apply unless in fact ■ two remedies are available." *Rooker* v. *Fidelity Trust Co.* (1921), 191 Ind. 141, 161, 131 N. E. 769.

To apply the doctrine here would enable appellant Edgar Thomas to retain property to which he is ■■ not equitably entitled, and which equitably belongs to appellee, and would permit the use of the statute of wills as an instrument of fraud.

Appellee in fact did not have the remedy which appellants contend she pursued in the proceeding to probate the will. She could not recover her property on the theory of taking under the will, because, as was decided by the Probate Court, there was no valid will.

If appellee did elect a remedy by prosecuting the proceeding to probate the will, which we do not decide, she elected a remedy which did not exist. Election of a supposed remedy does not constitute an election of a remedy. *McCoy* v. *McCoy* (1903), 32 Ind. App. 38, 69 N. E. 193; *Bunch* v. *Gray* (1887), 111 Ind. 351, 12 N. E. 514; *Nave* v. *Powell* (1916), 62 Ind. App. 274, 110 N. E. 1016; *Rooker* v. *Fid. Trust Co., supra.*

Appellant's answer being based on the theory of election of remedies, but failing to allege an election of remedies, and it being manifest that said answer ■ "could not be amended so as to make the facts therein stated in anywise germane to the controversy," the court did not err in striking it. *Ellison* v. *Branstrator* (1909), 45 Ind. App. 307, 88 N. E. 963; *Hart* v. *Scott* (1907), 168 Ind. 530, 81 N. E. 481. The facts stated in the answer did not "tend to constitute . . . a defense." *Guthrie* v. *Howland* (1904), 164 Ind. 214, 73 N. E. 259.

Judgment affirmed.

Bridwell, P. J., concurs in the result.