**POPE et al. v. GARRETT.**

No. 11893.

Court of Civil Appeals of Texas. Galveston.

July 17, 1947.

Rehearing Denied Oct. 16, 1947.

Bleecker L. Morse, of Galveston, for appellants.

Terry, Cavin & Mills and Ballinger Mills, Jr., all of Galveston, for appellee.

GRAVES, Justice.

This appeal is from a judgment of the 56th district court of Galveston County, entered in part upon a jury's verdict on special issues, and in part "upon such additional considerations and findings as were authorized by law," which were recited to have been made independently by the court, impressing a trust upon a small lot of land in Galveston County in favor of the appellee herein, and decreeing her to be the beneficial owner of the property and of the equitable title thereto, as against all of the appellants as claimants thereof.

The appellants, eight in number, were admittedly all the heirs at law of Carrie Simons, deceased, who died intestate with the title to the property standing in her name on the county records; the court's stated decree being based upon its finding that the appellants, as such heirs, held the record-title to the property, under the facts found in the jury's verdict therein, in trust for the appellee, and that such facts constituted her the beneficial owner of all the property down under Carrie Simons, and as holder of the equitable title thereto, such findings of the jury, in substance, having been as follows:

That some days before her death Carrie Simons requested Thomas Green to prepare a will for her leaving all her property to appellee, Claytonia S. Garrett; that he did so, and thereafter read the instrument to Carrie Simons, in the persence of two named witnesses and others, whereupon she then declared the same to be her last will; that she at the same time prepared to sign her name to the instrument, and so attempted to sign the same, being then of sound mind and not in an unconscious condition; whereupon, the appellants, Evelyn Jones and Lillie Clay Smith, by physical force, or by creating a disturbance, prevented Carrie Simons from carrying out her intention and attempt to then and there execute such instrument as her will; that shortly after such incident, whereby Carrie Simons was so prevented by Evelyn Jones and Lillie Clay Smith from executing such instrument as her will in the presence of the indicated witnesses, she suffered a severe hemorrhage and lapsed into a semi-comatose condition, and remained in such condition from that time until her death.

There were at the time of the trial court's judgment eight of the heirs at law of Carrie Simons, including Evelyn Jones and Lillie Clay Smith, the two who were so found to have prevented her from executing the putative will thus forming the basis of the trial court's judgment in favor of the appellee.

While appellants attack the judgment on a number of grounds, including the contention that the district court had no jurisdiction over such a proceeding, and including their claim that the probate court alone could have taken cognizance thereof, and that no such putative will proceedings had in fact occurred at all, their main boiled-

down contention is this: "The instrument had no probative force, particularly so as the last will and testament of Carrie Simons, deceased."

With this quoted and comprehensively stated position the appellee thus agrees: "With the above quotation from appellants' brief appellee is in wholehearted agreement, because the instrument introduced in evidence in the trial before the district court had no probative force, as it was not signed by Carrie Simons, nor wholly written in her handwriting, and could not have been probated in the county court."

So that, the judgment as rendered by the trial court on the facts so found by the jury was based alone upon its holding that the fraud, misconduct, or illegal act—at least of such of the appellants as participated therein—in so preventing Carrie Simons from carrying out what would have been a will, making the appellee her sole devisee, gave rise to a trust in her favor against the property that otherwise came to the appellants, as her heirs at law, which, under the principles of equity, constituted them the constructive trustees of what she otherwise would have legally and competently willed to appellee.

That such a trust does arise under the legal equivalent of the facts thus found in the jury's verdict herein is thought to be well settled: Binford v. Snyder, 144 Tex. 134, 189 S.W.2d 471; Ruling Case Law, Vol. 26, page 1236; Restatement of the Law, Restitution, par. 160; Spencer v. Pettit, Tex.Civ.App., 17 S.W.2d 1102; 27 Harvard Law Review, 437; Bogert on Trusts and Trustees, Vol. 3, Sec. 471; Hendrix v. Nunn, 46 Tex. 141; Fidelity & Deposit Company of Maryland v. Wiseman, 103 Tex. 286, 124 S.W. 621, 126 S.W. 1109; Ransdel v. Moore, 153 Ind. 393, 53 N.E. 767, 53 L.R.A. 753; Vance v. Grow, Ind. App., 185 N.E. 335; 26 Ruling Case Law, 1243; Thomas v. Briggs, 98 Ind.App. 352, 189 N.E. 389; Page on Wills, Vol. 4, page 961, Sec. 1764; 20 Iowa Law Review, 696; 9 Notre Dame Law Journal, 457; Anno. 98 A.L.R., 474, at page 478; Cassells v. Finn, 122 Ga. 33, 49 S.E. 749, 68 L.R.A. 80, 106 Am.St. Rep. 91, 2 Ann.Cas. 554.

It is further held that in our blended system of law and equity, our district courts have jurisdiction of such a proceeding. Page on Wills, Vol. 4, Section 1763.

Indeed, the appellants did not, as indicated, seriously question that such a right does arise in proper circumstances, since they largely confined their contentions to the one that the instrument declared upon by the appellee could not, to any degree whatever, constitute the will of Carrie Simons.

But upon the principles governing the imposition of a constructive trust upon the legal title to real property, as established in the cited authorities, this court has no difficulty in holding that, under the facts so found by this jury, which were fully sustained by the testimony, the trial court in this instance did not err in so decreeing the trust to have been imposed upon the property, as against the two heirs who were so guilty of preventing the execution of the will in favor of the appellee.

However, after a careful examination of the entire record, this court is unable to find any participation in those acts by any others of the appellants. The appellee pled such preventive acts to have been committed by such two named appellants only (and one other unnamed one of them), and based her cause of action accordingly; neither alleging, nor, so far as this court knows, offering any evidence to show, that any others of the appellants participated in such acts, or even were present when they were committed, or knew in advance such acts would be committed.

All the appellants, in their answers, beyond general denials in concert, likewise made common cause against appellee's declared-upon cause of action, limiting their attack against it to the effect, (1) that no such putative will proceedings had in fact occurred, and if they had, (2) they had been ineffective against them, hence the purported will form had been at most a mere scrap of paper; none of them specifically pled that they had not joined in the forcible acts so found against Lillie Clay Smith and Evelyn Jones, nor did they object to the issues the trial court submitted, or request any others, inquiring whether,

under the facts, any of them had ever participated in such forcible acts, or had aided or abetted Lillie Clay Smith and Evelyn Jones in committing them, or even knew in advance such acts would be committed.

In fact, no such issue was at any time raised by either side during the trial below, nor was it afterwards raised until, following the return of the jury's verdict, the appellants filed their joint and several motion for judgment—notwithstanding the verdict—in their favor, wherein they asserted that neither the pleadings nor evidence supported the findings against any of them.

Such is the state of this record; in other words, it conclusively appears upon the face of it that, while the trial court's judgment under the findings of the jury and the law applying thereto, as determined supra, was properly rendered decreeing a constructive trust against the property as affected the interests therein of the two appellants committing the preventive acts, the judgment, as against the other six of them, is undisputedly not supported by either the pleadings or the evidence, hence cannot stand.

The appellee's petition alleged primarily that the act of preventing the execution of the will raised an equity in her (that is, a cause of action which she could assert in a court of equity); and, in the alternative, that such act of preventing the execution of the will gave her a cause of action for damages, which she could urge at law.

But, obviously, it is thought, a court of equity would not impress a trust on property which lawfully vested in another person, who had committed no act either in prejudice or in fraud of a plaintiff's claim of a right therein, or a title thereto.

In appellee's brief it is suggested, "This case is one of first impression in Texas"; it being added that there are rulings upon it by the courts elsewhere in the United States and in Great Britain.

However that may be, it is held that, under the authorities cited supra, some of them from Texas courts, there is ample support for the judgment rendered, in so far as it affected the property of the two appellants participating in the fraudulent acts, upon which alone it was so based.

These same authorities, by clear implication, likewise support the converse of that rule, as affects the non-participating six of these appellants in the preventive acts so lying at the base of the imposition of the trust upon the property; in that they were not shown to have ever participated in, known of, or been affected by, the fraud practiced by the other two, without which no such constructive trust could have been fastened upon their own interests; in other words, the other six appellants stood out at arm's length as owners of their several interests as admitted heirs-at-law of Carrie Simons, with their titles unaffected by fraudulent acts committed by other persons.

Indeed, as this court reads them, in all of the authorities cited and relied upon by the appellee as supporting the judgment in her favor against all the appellants, beginning with the parent one, so to speak, of Ransdel v. Moore, 153 Ind. 393, 53 N.E. 767, there was fraud committed by the individual against whose interest such trust was imposed, which itself was the sine qua non of any such judgment against him. If this deduction be correct—that is, that there must have been the equivalent of misconduct, fraud or at least an illegal act brought home directly to the person affected before such a trust in equity could be properly visited upon his property—then it would be supererogatory to undertake the collation or discussion of other authorities supporting this court's holding.

It follows from the conclusions stated that the trial court's judgment should be affirmed, in so far as it affected the interests in the property of the two appellants, Lillie Clay Smith and Evelyn Jones, but reversed, and the cause rendered, in so far as it affected the several interests of the remaining six heirs at law of the deceased, Carrie Simons; it will be so ordered.

Affirmed in part; reversed and rendered in part.

On Appellants' and Appellee's Motions
for Rehearing.

CODY, Justice.

We pointed out in our original opinion that appellee sought, alternatively, two remedies against appellants in satisfaction of the wrong done her, which wrong consisted of the prevention of the execution of the will. Generally speaking, the only relief, which a court in the exercise of its legal powers can give, is a judgment awarding a sum of money. Frequently such a judgment would be inadequate. So, a court in the exercise of its equitable powers will, in a proper case, award specific restitution, where in the exercise of its legal powers it could only award monetary damages. In other words, to effect restitution a court in the exercise of its equitable powers will, in a proper case, impress the property with a constructive trust.

In the case at hand the appellee might have obtained a judgment for damages against the participating appellants because of their wrongful act in preventing the execution of the will. The measure of damages would have been the value of the property which would have passed by the will except for the wrongful act. Again, appellee might have had so much of the property as passed to the participating appellants impressed with a constructive trust, and have further obtained a money judgment against them for the value of so much of the property as passed under the laws of descent and distribution to the non-participating appellants. But the non-participating appellants were not answerable to the appellee for the wrongful act, an act which they did not commit. No award of money damages would be made against them therefor by a court in the exercise of its legal powers; and so also, no property which passed to them under the laws of descent and distribution would be impressed with a constructive trust. They had done no act requiring that they make restitution.

Appellee would place the non-participating appellants in the position that they would occupy had they acquired their interest in the land from the participating appellants. Obviously, only an innocent purchaser for value could acquire the interest which vested in the participating appellants free from the equity of appellee to have a constructive trust impressed thereon. But, as indicated in our original opinion, an equity to have a trust impressed on the land is not an equitable estate in said land. And said equity would become an equitable estate in the land only by a judgment of the court, impressing a trust on the land for the benefit of appellee.

Appellee recognizes that the land passed to appellants under laws of descent and distribution; but only so much thereof as passed to the participating appellants, passed subject to the equity raised in appellee to have their interest impressed with a constructive trust in order to make appellee whole, as against their wrongful act. The fact that the wrongful act caused the non-participating appellants to become vested with undivided interest in the land resulted from the laws of descent and distribution. And what the law gives a party can never be called unjust enrichment. Had appellee availed herself of her legal remedies, she could have obtained a judgment for money damages against the participating appellants. Indeed a court of equity, which does full justice between parties when it has once acquired jurisdiction, would have awarded monetary damages to appellee to the extent of the value of land which passed to the non-participating appellants in addition to impressing a trust on the interest which passed to the participating appellants under the laws of descent and distribution, had such remedy been duly prosecuted, and the value been proved. But in no event would a court of equity deprive innocent heirs of what the law cast upon them. The land was free of any equity in appellee so long as it remained in Carrie Simons, and passed to her heirs in the same condition except as her heirs may have raised an equity against themselves. So, the undivided interests in the land which passed to the non-participating appellants, passed free of any equity; whereas undivided interests in the land passed to

the participating appellants, subject to an equity in appellee to have same impressed with a constructive trust.

As pointed out in our original opinion, the appellee treated all the appellants alike. And all the appellants duly resisted her attempt to impress a constructive trust upon their property. The appellants all duly urged that there were neither sufficient pleadings or proof to warrant the judgment sought by appellee. The non-participating appellants were not bound to do more than to show that appellee had not made out a case against them. And this they did, though the participating appellants failed to do so.

The motions for rehearing by appellants and appellee are both refused.