803 So.2d 515 (2001)
Ex parte Betty BATCHELOR and J.D. Brown.
(Re Betty BATCHELOR and J.D. Brown
v.
Orwood YATES, as personal representative of the estate of David Yates, deceased; and Travis Yates, as personal representative of the estate of David Yates, deceased).
1991507.
Supreme Court of Alabama.
May 18, 2001.
B. Scott Shipman of Sherrill, Batts & Shipman, L.L.C., Athens, for petitioners.
Alan Courtney Crowder of Phelps, Jenkins, Gibson & Fowler, L.L.P., Tuscaloosa, for respondent.

On Application for Rehearing
PER CURIAM.
The application for rehearing is granted; the opinion released on January 5, 2001 is withdrawn; and the writ is quashed as improvidently granted.
APPLICATION FOR REHEARING GRANTED; OPINION OF JANUARY 5, 2001, WITHDRAWN; WRIT QUASHED.
SEE, LYONS, BROWN, JOHNSTONE, WOODALL, and STUART, JJ., concur.
MOORE, C.J., and HOUSTON and HARWOOD, JJ., dissent.
HARWOOD, Justice (dissenting).
I dissent from the order quashing the writ of certiorari. Betty Batchelor and J.D. Brown were the niece and nephew, respectively, of Christine Belcher and Leland Belcher. The Belchers, who were married for approximately 40 years, had no children. Mr. Belcher predeceased Mrs. Belcher; she then married David Yates, before 1995. Pertinent to this case are the subsequent developments, described in paragraphs 4 through 10 of the plaintiffs' complaint:
"4. On or about October 3, 1995, Christine Belcher Yates retained the Honorable Thomas A. Nettles, IV, an attorney, to draft a Last Will and Testament. Christine Belcher Yates and Mr. Nettles met several times over the course of many months in order to discuss the contents of her Will.
"5. On or about July 28, 1997, Christine Belcher Yates was in the hospital for a heart condition. Mr. Nettles and Davis S. Burton, Jr., the accountant for Christine Belcher Yates, took a draft of the Will prepared by Mr. Nettles to the hospital for execution.
"6. At said time and place, Christine Belcher Yates was alert and competent and told Mr. Nettles to make certain changes to the Will, which included donations to certain charitable organizations and the designation of the recipients of the remaining principal of a `Family Trust' created by said Will. She directed that the remaining principal of said trust should be distributed to her `heirs' as determined by state law of intestate succession.
"7. After the above-described meeting, Mr. Nettles made the changes to the Will as requested by Christine Belcher Yates, which resulted in the `Last Will and Testament of Christine Belcher Yates' attached hereto as Exhibit `A.'

*516 "8. On or about the following day, July 29, 1997, Mr. Nettles had a telephone conversation with David Yates. Mr. Yates told Mr. Nettles in a loud and angry voice that he did not appreciate Mr. Nettles and Mr. Burton going to the hospital in order to get Christine Belcher Yates to sign her Will and otherwise objected to their efforts in having said Will executed. After Mr. Yates had finished speaking, he ended the telephone conversation without waiting for a reply from Mr. Nettles.
"9. As a direct and proximate result of said telephone conversation, Mr. Nettles did not attempt to contact Christine Belcher Yates in order for her to execute the revised Will as she had requested.
"10. Christine Belcher Yates died intestate on September 2, 1997. Her second spouse, David Yates, inherited the entire estate of Christine Belcher Yates."
Betty Batchelor and J.D. Brown sued the estate of David Yates (David Yates himself having died by the time the complaint was filed). They subsequently amended their complaint to add as defendants Orwood Yates and Travis Yates, as personal representatives of the estate of David Yates. The defendants filed a motion to dismiss, which the trial court granted. Batchelor and Brown appealed the judgment of dismissal; this Court transferred the appeal to the Court of Civil Appeals, which, on March 10, 2000, affirmed the judgment of the trial court, without an opinion. Batchelor v. Yates (No. 2990308), 795 So.2d 852 (Ala.Civ.App. 2000) (table). In its unpublished memorandum of affirmance (see Rule 53, Ala. R.App. P.), the Court of Civil Appeals cited, among other authorities, Rule 12(b)(6), Ala.R.Civ.P., and Holt v. First National Bank of Mobile, 418 So.2d 77 (Ala.1982). This Court granted the plaintiffs' petition for certiorari review.
The plaintiffs attempted in their complaint to state a cause of action for "tortious interference with an expectancy in an inheritance or bequest." The pivotal issue is whether the plaintiffs' attempt was so deficient as to warrant a disposition of the case at the pleadings stage. In 1982 this Court decided Holt, supra, wherein it noted that a number of other jurisdictions had recognized such a cause of action, but had required as an element of the cause of action that the defendant must have used independently tortious means to interfere with the testator's intent. Holt cited as "[t]he most glaring example of such a wrongful act" the circumstances of Pope v. Garrett, 204 S.W.2d 867 (Tex.Civ.App. 1947), wherein two of the defendants "prevented the testatrix from signing her will in the presence of witnesses, by force or by creating a disturbance." Accordingly, in that case, just as in the present case, the proposed will was not actually executed. In Holt, the plaintiffs were the two daughters of a man who had remarried less than three years before his death on April 9, 1959. The daughters alleged that he had expressed an intention to leave certain property to them, but that the new wife "by false and fraudulent representations and by the exercise of duress and undue influence, intentionally and maliciously prevailed upon [him] to leave his existing will unchanged." The reading of the will, and the sale of the family house that the daughters alleged the father had intended to go to one of the daughters, occurred within 12 months of his death, but the daughters took no action within that time to contest the testamentary disposition. More than 15 years after the alleged promise would have been made, and after the death of the stepmother, the daughters sued, alleging that they had not discovered the fraudulent and deceitful *517 conduct on the part of the stepmother until after her death. The daughters sued the bank serving as executor of the stepmother's estate; the bank moved for a dismissal of the action for failure to state a claim. The circuit court granted that motion and dismissed the action.
The daughters appealed to this Court, which affirmed the dismissal. Part of the rationale this Court used was that plaintiffs who had succeeded in persuading the courts of other jurisdictions to recognize their claims for tortious interference with an expectancy in an inheritance or bequest had "presented much stronger cases than these plaintiffs have alleged," in that "[e]ither the alleged bequest to the plaintiff was in writing, or written evidence of the fraudulent representation existed." 418 So.2d at 80. (Citations omitted.) This Court held "that with no writing alleged and with [the stepmother], the alleged defrauder, deceased, the plaintiffs herein have not alleged facts which would bring them within the proposed cause of action." 418 So.2d at 80. The Court acknowledged that several of the courts in other jurisdictions had remarked that the difficulty of proving such case does not go to the existence of a cause of action, but opined that "a line must be drawn somewhere." 418 So.2d at 80. Important to this Court were the facts that "the alleged promise would have been made more than 15 years before the original complaint was filed, [that] the alleged tort-feasor is dead, and [that] no written evidence of either the intent or the fraud is alleged." 418 So.2d at 80. Additionally, beyond the mere difficulty of proof, the proposed action, the Court said, would controvert "the policy of several well-established principles of law," specifically the formalities required for testamentary dispositions of property; the Statute of Frauds, requiring that an agreement to make a will or to convey an interest in real property be in writing; the statutes of limitations, barring the prosecution of stale claims; and the Deadman's Statute, whereby persons having a pecuniary interest in the result of an action are disqualified to testify as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the action. This Court wrote that under the circumstances of the case as alleged by the plaintiffs in Holtthey alleged that their stepmother had promised their father that she would make certain dispositions of property favorable to the plaintiff daughters, so as to make it unnecessary for him to change his willthe aforementioned policies, based on well-established principles of law, "particularly pose problems... because [the] plaintiffs must prove that [the stepmother] had no intention of performing the alleged promise at the time she made it." 418 So.2d at 80. With the stepmother dead, "the parties would have to engage in a `swearing match' as to her state of mind 23 years ago," the Court said. 418 So.2d at 80.
In the present case, the statutes of limitations and the Deadman's Statute are not implicated. The "formalities required for testamentary dispositions of property" are implicated, but there is in existence the "Last Will and Testament of Christine Belcher Yates" prepared by her attorney pursuant to her series of consultations with the attorney and incorporating the changes last instructed by her when she conferred with the attorney and her accountant at her hospital room on July 28, 1997.
Other well-established legal principles should be considered in regard to the disposition of this case: 1) Motions to dismiss for failure to state a claim should be granted very sparingly and only when it appears beyond a doubt that the plaintiff can prove no set of facts entitling him to relief, Brown v. Williams, 576 So.2d 195 (Ala. *518 1991). 2) Appellate courts must review a ruling on a motion to dismiss in the light most favorable to the plaintiff and must resolve all reasonable doubts in the plaintiffs favor. Thermal Components, Inc. v. Golden, 716 So.2d 1166 (Ala.1998).
This Court has written:
"In Lavoie v. Aetna Life and Casualty Co., 374 So.2d 310 (Ala.1979), and Trabits v. First National Bank of Mobile, 295 Ala. 85, 323 So.2d 353 (1975), we cautioned that the courts should be especially reluctant to dismiss a case on the pleadings when the theory of liability is novel and untested. Such cases should be explored in light of actual facts developed on discovery or otherwise, citing Wright and Miller, Federal Practice and Procedures 1357 (1969)."
Roberts v. Meeks, 397 So.2d 111, 114 (Ala. 1981). In Holt, supra, this Court acknowledged that proposition, but concluded that "[b]ecause the allegations of the complaints herein show so many countervailing policies, and indeed indicate that a plaintiff's verdict in judgment would be unsustainable, we decline in this case to follow the ... predilection for denying motions to dismiss novel complaints." 418 So.2d at 81.
As noted, we do not have "so many countervailing policies" applicable in this case. The action was filed 21 months after Christine Belcher Yates had died intestate, on September 2, 1997. Her attorney, Thomas A. Nettles IV, and her accountant, Davis S. Burton, Jr., are fully competent to testify concerning her instructions and her expressed intent and concerning the resulting "Last Will and Testament of Christine Belcher Yates." Nettles is also fully competent to testify as to the telephone conversation he had with David Yates the day after he and Mr. Burton had visited with Mr. Yates's wife. That plaintiffs have marginally alleged, on the part of Mr. Yates, an underlying tort of interference with the contractual relationship between Mrs. Yates and her attorney.
I would not quash the writ. I would reverse the judgment of the Court of Civil Appeals and require that the circuit court set aside the order dismissing the case for failure to state a claim upon which relief could be granted, so as to allow discovery to proceed. Once a proper record has been fully fleshed out, a more appropriate procedural vehicle, a motion for summary judgment, could be used to test the sufficiency of facts alleged to constitute the asserted cause of action.
"The Court should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme, since it is important that new legal theories be explored and assayed in light of actual facts rather than a pleader's suppositions. If after development of the facts it appears that the plaintiff is entitled to no relief, then summary judgment is the appropriate procedure to dispose of the claim.
". . . .
"Accordingly, it is the facts of an actual case which will breathe life into the legal theories now advanced by appellants, and their claims should not be summarily dismissed at the pleading stage. Therefore, appellee's [Rule] 12(b)(6) motion should have been overruled. Of course, denying the [Rule] 12(b)(6) motion does not preclude a later determination at trial or on motion for summary judgment that appellants are not entitled to the relief requested."
Lavoie, supra, 374 So.2d at 311-12. (Internal quotation marks and citations omitted.)
The defendants Yates point out that at page 4 of the "Facts" section of the plaintiffs' petition for the writ of certiorari, the *519 plaintiffs cite the record as supporting a characterization of the telephone call by David Yates to Mr. Nettles as being that Mr. Yates, "in a loud and angry voice, objected to the attorney having the will executed and instructed him not to return to the hospital to see Mrs. Belcher-Yates," and that "[b]ecause Mr. Yates instructed him not to go to the hospital, Mrs. Belcher-Yates' attorney did not return to the hospital to have the will executed." That is certainly an elaboration upon the abovequoted allegation of the complaint stating that "Mr. Yates told Mr. Nettles in a loud and angry voice that he did not appreciate Mr. Nettles and Mr. Burton going to the hospital in order to get Christine Belcher Yates to sign her Will and otherwise objected to their efforts in having said Will executed." That, however, is exactly why the actual facts, rather than a "pleader's supposition," should be developed for the record before a final determination is made as to whether the novel cause of action for tortious interference with an expectancy in an inheritance or bequest should be recognized, or rejected, in this particular case.
Accordingly, I would reverse the judgment of the Court of Civil Appeals and direct that the judgment of dismissal be set aside, so that the parties could conduct appropriate discovery, presumably to include the depositions of Mr. Nettles and Mr. Burton.
MOORE, C.J., and HOUSTON, J., concurs.