# Hitchcock *v.* Cosper.

[No. 20,569. Filed February 17, 1905. Rehearing denied May 11, 1905.]

1. Trusts. — *Disavowal.* — *Statute of Limitations.* — In an action against a trustee, the statute of limitations begins to run at the time of the trustee's open disavowal or repudiation of the trust. p. 639.

2. Same. — *Direct Trusts.* — *Statute of Limitations.* — The statute of limitations does not bar an action against the trustee of a direct and continuing trust. p. 640.

3. Trial.—*Special Finding.*—*Trusts.*—*Conclusion.*—A special finding that the defendant's relation to plaintiff in reference to her money and business affairs was one of "continuous trust and confidence," without disclosing the facts, fails to establish the existence of a legal trust, such finding being a conclusion. p. 640.

4. Trusts.—*Indirect.*—*Statute of Limitations.*—While the plaintiff in entrusting money to her son-in-law to loan for her did repose trust and confidence in him, still, it was not such a trust as the law denominates a direct and continuing one, against which the statute of limitations will not run. p. 640.

5. Limitation of Actions. — *Trusts.* — *Demand.* — Where plaintiff, reposing trust and confidence in her son-in-law, gives her money to him to loan, and he loans it to insolvent persons, and it is thereby lost, a demand is not necessary as a condition precedent to maintaining an action against such son-in-law on account of such transaction. p. 641.

6. Same.—*Demand as a Condition Precedent.*—*When Made.*—Where a demand is a condition precedent to the right to bring an action, in the absence of a legal excuse, such demand must be made within the period limited by statute for the bringing of the action. p. 643.

From Noble Circuit Court; *Emmet A. Bratton,* Special Judge.

Action by Emeline K. Cosper against Don K. Hitchcock. From a decree for plaintiff, defendant appeals. Transferred from Appellate Court under subdivision 2, §1337j Burns 1901, Acts 1901, p. 565, §10, subd. 2. *Reversed.*

*H. G. Zimmerman* and *Robert W. McBride,* for appellant.

*L. H. Wrigley,* for appellee.

JORDAN, J.—This action was prosecuted by appellee to recover $340, with interest thereon. The complaint avers substantially the following facts: The defendant is, and has been since 1884, a son-in-law of the plaintiff. On and prior to November 30, 1892, the relations between plaintiff and defendant were "close and confidential." During said time the defendant was plaintiff's confidential adviser in regard to her business affairs. He loaned and collected her money, transacted other business, and was, as averred, "trustee and business agent." About three weeks prior to said November 30, he received from plaintiff, of her money, the sum of $340. This money, it is alleged, he received in trust, to be replaced and kept at interest by him for plaintiff. He received this money as trustee for the plaintiff, and agreed to loan and keep the same at interest for her. It is alleged that on November 30, 1892, he loaned said sum of $340 to William Donat, and accepted a note, with Allen Donat as surety, for that amount, bearing interest at seven per cent., and due in eleven months. This note, it appears, at the instance of the defendant, was made payable to him. No part of the note has ever been paid, and the same is now due. On November 30, 1892, at the time said loan was made, William and Allen Donat, the makers of the note, were wholly insolvent, and had no property subject to execution. At the time the note in question was executed, the defendant had knowledge of the insolvency of said makers, and in making the loan to them he failed to exercise any care or diligence whatever, and since making the loan he has at no time taken any steps or instituted any proceedings for the collection of said note. It is further charged that within a month after the note was executed the husband of plaintiff died, and that on frequent occasions since the execution of the note the plaintiff has demanded of the defendant that he proceed to collect it. This he has promised to do, stating to plaintiff each time that William Donat was honest and

would pay the note. Plaintiff, relying upon his promises as aforesaid, made no effort to collect said note, and made no demand upon the defendant for the money, or for an accounting concerning the same, until September, 1901, when she demanded of him that he account to her for and with respect to said $340, and that he pay over to her such an amount as, upon a fair and equitable accounting and settlement, should be found to be due, with interest thereon. The prayer of the complaint asks for an accounting, and a judgment is demanded for the sum of $600. A demurrer to the complaint was overruled, and appellant thereafter filed an answer in two paragraphs: (1) A general denial; (2) six-year statute of limitations. Appellee's demurrer to the second paragraph of the answer was overruled. Upon the issues joined there was a trial by the court, and upon request a special finding of facts was made, with conclusions of law thereon in favor of appellee. Judgment was accordingly rendered in favor of appellee for $541. Appellant appeals, and assigns that the court erred in overruling the demurrer to the complaint, and in each of its conclusions of law.

The facts embraced in the special finding to an extent follow the averments of the complaint, and are substantially as follows: Appellant is, and has been since 1884, a son-in-law of appellee. The husband of the latter died in 1893, and appellant's connection with appellee's business affairs commenced in the year 1890. In the latter year, upon appellant's suggestion, appellee purchased through him, as her agent, mortgage notes to the amount of $1,000. These notes were assigned or transferred to her, but remained in appellant's hands until some time in the spring of 1891, and it appears he collected the same and paid the proceeds thereof over to appellee. Her entire estate consisted of $1,600. In November, 1892, it appears that appellee, upon the suggestion of appellant, placed in his hands $600, which, "as agreed between them at the time he received it as her

agent, was to be by him placed at interest for her." Appellee demanded no receipt of appellant, and none was given. He, it appears, deposited the $600 in the bank to his own credit. Of the amount so deposited he loaned to John Free $200, and to William Donat he loaned $340, which is the transaction in controversy in this suit. The remainder —$60—he kept in his hands until a settlement was had between him and the appellee in 1901. The court finds that from the time appellant received said $600, "continuously until the time of said settlement, defendant acted as plaintiff's adviser in her business affairs and as her agent; that the relationship which existed during said period between plaintiff and the defendant with reference to plaintiff's money and her business affairs was one of continuing trust and confidence on the part of the plaintiff in the defendant with reference to said matters. After the death of plaintiff's husband in 1893, and up to the time of such settlement, plaintiff depended upon defendant entirely in connection with her business affairs, and he transacted her business for her generally, collected her money for her, tended to the payment of her taxes, and made her returns to the assessor for taxation." No agreement between appellant and appellee was made in respect to the compensation that he was to receive for his services. While so acting for appellee appellant collected and paid over to her various sums of interest, and also, it appears, collected for her notes for the following amounts: One for $480, one for $223, and another for $250. All of these were collected by him prior to 1896, except parts of the last-mentioned note which were paid in the years 1897 and 1898. All of the money so collected for appellee remained in appellant's hands and subject to his use, with the consent of appellee, until the settlement which was had between the parties in 1901. In August, 1900, at appellee's request, an accounting was had in respect to the money belonging to her then in appellant's hands, which amounted to $1,013, and some time in the winter of 1901

appellant executed to appellee a note for $900 in settlement therefor. No interest was charged against appellant for the money that had been in his hands. The $340 which he loaned to Donat was not included in the settlement made in August, 1900. Acting as appellee's agent, appellant made the loan to William Donat of $340, and accepted as evidence thereof a note bearing date of November 30, 1892, due in eleven months after date, with interest at seven per cent. This note was signed by William Donat and his son Allen, and was made payable to appellant in his individual name. When appellant accepted this note he knew appellee would depend upon him to collect it, and he had the note made payable to him, with the intention of collecting it and transacting all the business in connection with the loan and its collection. It is found that appellant has never taken any steps to collect the note in question, aside from soliciting payment from the maker. Within a day or two after the note was executed, appellant, without indorsement, delivered it to appellee, who accepted the same without any objection, and has ever since had control and possession thereof, except when she would give it to appellant at different times for the purpose of collecting it. At the time the defendant delivered the note to the plaintiff as above stated, her husband, it appears, was present, and he said in her presence to appellant that he did not believe the note was collectible. Appellant replied to this by saying: "Donat is honest and will pay the note." On different occasions after the maturity of the note (the last of which was in the summer of 1901) appellee requested appellant to proceed to collect the note, and in each instance he advised her to wait, and that no suit be commenced. In September, 1901, appellee demanded of appellant that he account for and pay to her the amount of the loan which he had made to William Donat, which he refused to do, and denied all liability. On September 17, 1901, it appears she made a written demand for the amount

of the loan, with interest, with which appellant refused to comply. This action was instituted on September 21, 1901. It is found that appellant made the loan in good faith, believing Donat to be honest; that prior to the time of making the loan he had loaned Donat money of his own, which loans had been paid by Donat. William Donat and appellant belonged to the same fraternal order, and appellant had a friendship and sympathy for Donat on account of his financial difficulty. He made no examination of the public records, and made no inquiries to ascertain Donat's financial standing, and exercised no care or diligence in making the loan, aside from inquiring of Donat himself, who represented to appellant that the only lien against his land was a mortgage of $1,800 in favor of an insurance company, and that after the payment of two or three more premiums on a policy which he held on the life of Allen Donat the policy would be matured, and the money be used to discharge said mortgage indebtedness. Appellant knew when he made the loan that William Donat's wife was living, and that he was a householder. Allen Donat has never owned any real estate, and when the note was given he owned only $40 or $50 worth of personal property, and has owned no greater amount since, except in 1893 and part of 1894 he owned personal property of the value of $200 or $250. In 1889, and until 1895, William Donat owned 157 acres of land, 117 acres in one tract and 40 acres in another. In 1889 he and his wife executed a mortgage on the 117 acres to an insurance company to secure a note for $1,800, and the interest coupon notes, also four premium notes for $159.19 each; that in the same year he and his wife executed a mortgage on both tracts for $700, and interest notes; that in 1889 and 1890 he and his wife executed other mortgages to secure notes aggregating $791.87; that each of these mortgages was duly recorded within fifteen days; that when the note in question matured William Donat owned per-

sonal property to the value of about $500, and at no time thereafter owned any greater amount.   In 1894 the insurance company brought suit to foreclose its mortgages, making the junior mortgagees parties, and under a decree the insurance company purchased both tracts of land for $3,224.58; that the lands were not redeemed, and a sheriff's deed was executed to the company in August, 1895. In 1892 both tracts of land were worth $6,000.

As conclusions of law the court stated: (1) that the action is not barred by the statute of limitations; (2) that appellant is liable to appellee for the amount of the Donat loan—$340; (3) that appellant is also liable for $201 interest, that sum being six per cent. interest from the date of the loan to October 21, 1902; (4) that appellee is entitled to judgment for $541.

1.   The question discussed by counsel for the respective parties as the cardinal one in this appeal is, did the trial court err in holding that the action was not barred by the statute of limitations?   In support of this holding counsel for appellee contends that the facts found by the court show a direct continuing trust; or, in other words, that they establish that in receiving and loaning appellee's money, and in managing her business affairs, a direct and continuing trust was created—a trust which was not cognizable at law, but one which was wholly within the jurisdiction of equity; and therefore it is urged that appellee's right of action is not affected or barred by the statute of limitations.   If the facts in the case could be said to support this view, it would follow that the statute would not be a bar, for when such a trust is shown to exist there can be no limitation of time.   But to this rule there is also a qualification, which is, that when the trustee openly disavows or repudiates the trust, and clearly and unequivocally sets up a right and interest adverse to the beneficiary or *cestui que trust,* which fact is made known to the latter, the statute then begins to run.   *Raymond* v. *Simonson*

(1835), 4 Blackf. 77; *Stanley's Estate* v. *Pence* (1903), 160 Ind. 636, and authorities there cited; Wood, Limitations, §200.

2.   The general rule that the statute will bar suits in equity as well as those at law has a well-recognized exception; that is to say, that the rule does not apply to a direct and continuing trust, which is the very creature of equity and falls wholly within its jurisdiction. *Stanley's Estate* v. *Pence, supra,* and cases cited.

3.   There are, however, in the case at bar, no facts found to disclose the existence of such a trust. It is true that the trial court states in its special finding that the relation existing between the parties in reference to the plaintiff's money and her business affairs was, on her part, one of continuous trust and confidence in the defendant. A trust, however, is not shown by the mere allegation or statement that it exists. The facts disclosing how the relation of trustee and *cestui que trust* arose in the particular case must be averred or stated. 12 Ency. Pl. and Pr., 1032, and cases cited in foot note 4.

4.   It is doubtless true that appellee, in constituting appellant her agent, and in trusting him as such with her money to loan and in the management of her business affairs, in reason reposed a trust and confidence in him. But this did not create the character of trust which is recognized as sufficient to prevent the running of the statute. Conceding, without deciding, that the statement in the special finding to the effect that the relation existing between appellee and appellant was one of continuing trust and confidence is a finding of fact, and not a mere conclusion, still, considered alone or in connection with the other facts, it is not shown that a trust of the nature claimed by counsel for appellee ever arose or existed between the parties. The mere fact that there may have been a mutual trust and confidence existing between the parties, and that appellee placed full confidence in appellant as her agent in loan-

ing and collecting her money, will not suffice to constitute such a trust as to exempt the case from the operation of the statute of limitations. *Smith* v. *Calloway* (1844), 7 Blackf. 86; *Musselman* v. *Kent* (1870), 33 Ind. 452; *Newsom* v. *Board, etc.* (1885), 103 Ind. 526; *Parks* v. *Satterthwaite* (1892), 132 Ind. 411; *Jackson* v. *Landers* (1893), 134 Ind. 529.

In *Newsom* v. *Board, etc., supra,* in considering the question of trusts which are exempt from the operation of the statute, it is said: "These authorities, to which many more might be added, show that it has always been the rule that there are many kinds of trusts against which the statute of limitations will run, and they show, moreover, that it is not correct to affirm, as is sometimes done, that the statute never runs in the case of a trust. This statement is true of direct, technical trusts created by express law, or by deed or will, but it is not true of implied trusts, where there is concurrent equity and law jurisdiction."

5. It will be observed that the finding discloses that appellant, acting as appellee's agent, made the loan in question to William Donat, and accepted the note therefor executed by said Donat and his son. It appears that, as a matter of convenience in collecting the note, appellant had it made payable to himself. "Within a day or two" after the execution of this note he delivered it to appellee. She, it appears, accepted it without any objections, although at the time her husband, in her presence, expressed doubts as to the note's being collectible. In August, 1900, it is shown there was a full accounting and settlement between the parties in regard to appellee's money in the hands of appellant. The loan, however, to William Donat was not included in this settlement. Eliminating, as we may, from the complaint and the special finding all conclusions and immaterial matters, and it becomes apparent that this is an action to recover of appellant $340, with interest thereon

from November 30, 1892, the date of the loan, on the ground that he, as appellee's agent, loaned that amount of her money to Donat, an insolvent person, without taking sufficient security to insure the payment thereof. The argument is advanced by counsel for appellee that under the facts a demand was essential in order to give a right of action against appellant for his negligence in loaning the money in controversy. Therefore it is contended that the cause of action did not accrue until a demand was first made, and that the statute of limitations did not begin to run until after the demand, which was made on September 17, 1901, some four days before this suit was commenced. On the other hand, counsel for appellant contend that if the negligence of their client in making the loan in controversy can be held to render him liable for the money loaned, with interest thereon, then appellee's right of action accrued on November 30, 1892, the date of the loan, and the statute commenced to run from that time. They insist, however, that no demand was necessary as a condition precedent to appellee's right to sue, and in support of this contention they cite *Bronnenburg* v. *Rinker* (1891), 2 Ind. App. 391. The facts in that case disclose that "the defendant at his own request obtained from the plaintiff a certain sum of money, which, for a reasonable compensation, he agreed to loan for her at the rate of six per cent. interest upon good security." It appears that after obtaining the money he carelessly and negligently made a loan of $212, taking the individual note of the party to whom the money was loaned, without any security. The person to whom the loan was made at the time was insolvent. The defendant in that case delivered the note to the plaintiff, and falsely represented to her that it was secured by mortgage on real estate. The note was utterly worthless, and the plaintiff brought it into court and offered to return it to the defendant, alleging in her complaint that she had been damaged in the sum of $300 by reason

of the defendant's negligence in making the loan in controversy. In that case it was insisted that a demand either of the payee of the note or of the defendant should have been alleged. Reinhard, J., in passing upon the question in that appeal, speaking for the court, said: "We do not regard the allegation of such a demand necessary to withstand the objections urged to the complaint. This is not a case of conversion where, in some instances, to place the defendant in the wrong, the suit must be preceded by a demand and a refusal to pay. The damage here consists, not in converting the money, but in the failure to use ordinary skill and diligence in the loan of the money and thereby causing a loss of the same to the appellee. No demand would make it possible for the appellant to replace the money, if the averments of the complaint are true. The most that he could do upon a demand being made would be to pay the appellee out of his (appellant's) own funds. Where it plainly appears that a demand would be unavailing, none is necessary."

Conceding, without deciding the mooted question, that a demand was essential as a condition precedent to appellee's right to sue, we are nevertheless constrained to concur in the contention of appellant's counsel that the action is barred by the six-year statute of limitations, because the demand in question is shown not to have been made at some time within that period of limitation. *High v. Board, etc.* (1884), 92 Ind. 580; *Newsom v. Board, etc., supra; Kraft v. Thomas* (1890), 123 Ind. 513, 18 Am. St. 345; *Atchison, etc., R. Co. v. Burlingame Tp.* (1887), 36 Kan. 628; *Keithler v. Foster* (1871), 22 Ohio St. 27.

6. In *High v. Board, etc., supra,* the court says: "Although the cause of action did not accrue until a demand was made, yet the demand should have been made within a reasonable period from the time that it might have been made. A reasonable time, in the absence of circumstances justify-

ing or excusing a longer delay, is the time limited by the statute for the commencement of the action. If the rule were otherwise, a party, by his own act or failure to act, could preclude the running of the statute of limitations until such time as might suit his interest, convenience or pleasure to put it in motion."

In the appeal of *Newsom* v. *Board, etc., supra,* the court said: "The appellant's counsel contend that no cause of action accrued until a demand was made, and that the statute did not begin to run until that time. If we were to grant the assumption of counsel, it would avail them nothing, for the demand was not made until after the statute had run, and in such cases the demand is fruitless. Courts of equity will deny relief in cases of this character, since, to hold otherwise, would put it in the power of the party to destroy the beneficial effect of the statute. This question is so well argued in *High* v. *Board, etc.* [1884], 92 Ind. 580, that it is unnecessary to again discuss it." To the same effect is the holding in *Kraft* v. *Thomas, supra.*

The demand in this case, as shown, was not made until September 17, 1901, more than nine years after the date of the loan, and more than eight years after its maturity. If a demand was necessary, to say the least, it should have been made within six years after the maturity of the note. The facts in a legal sense can not be said to afford a sufficient excuse for the long delay on the part of the appellee in demanding that appellant make good to her the money which she had lost, as claimed, by reason of his negligence in loaning it to an insolvent person without sufficient security.

It follows, and we so conclude, that the judgment should be reversed, and the cause remanded, with instructions to the lower court to restate its conclusions of law to the effect that appellee's cause of action is barred by the statute of limitations, and render judgment accordingly.