BETSNER ET AL. v. BETSNER ET AL.

[No. 12,180.    Filed March 31, 1926.]

1.  TRUSTS.—*Failure of wife to carry out oral agreement with husband, to convey his property to children, would not constitute fraud and create a constructive trust.*—The failure of a second wife to carry out an oral agreement with her husband that if he would vest the title to his land in them by entireties, she would, if she survived him, convey the same to all his children, including children by his first marriage, would not constitute fraud so as to create a constructive trust in favor of the children by the first marriage.    p. 327.

2.  TRUSTS.—A constructive trust cannot exist without fraud, actual or constructive, at its inception.    p. 327.

3.  TRUSTS.—Parties seeking to establish a constructive trust have the burden of proving the fraud out of which the trust is claimed to have arisen.    p. 327.

4.  TRUSTS.—*Finding that plaintiffs had not established the fraud held supported by the evidence.*—A finding that plaintiffs had not established the fraud necessary to create a constructive trust in real estate as alleged in the complaint was not entirely unsupported by the evidence.    p. 327.

From Wabash Circuit Court; *Frank O. Switzer,* Judge.

Action for partition by John A. Betsner and others against Joseph Betsner and others.    From a judgment for defendants, the plaintiffs appeal.    *Affirmed.*    By the court in banc.

*Tillett & Lawrence* and *Long & Yarlott,* for appellants.

*Plummer & Plummer,* for appellees.

McMAHAN, J.—Complaint by appellants against appellees for partition of certain real estate.    The first

paragraph of complaint alleges that each of the appellants is the equitable owner of an undivided one-sixth of the real estate therein described. The second paragraph alleges that appellants and appellees are the children of Jacob Betsner, appellants being his children by his first marriage. That, after the death of his first wife and mother of appellants, Jacob remarried and that appellees are the children of said Jacob by virtue of his last marriage; that in 1871, Jacob purchased certain real estate in the city of Peru; that said Elizabeth Betsner, mother of appellees, at the time of said purchase, demanded of her husband Jacob that the title of said real estate be taken in their joint names as tenants by entireties; that Jacob objected to so taking the title, for the reason that the title, upon his death prior to her death, would vest entirely in said Elizabeth, and that, unless she made a will or deed upon her death, the property would go to her children and appellants would receive no part thereof; that said Elizabeth thereupon agreed with her husband that if he would take the title to said real estate in their joint names and she survived him, she would, prior to her death, by deed or will, vest the title to said real estate in all of the children of said Jacob, including appellants; that Jacob paid the entire consideration for the purchase of said real estate and relying upon the said agreement with his wife, he caused the title to be taken in the name of himself and Elizabeth, by the entireties; that Elizabeth did not intend to carry out the terms of said agreement; that she made said promise for the fraudulent purpose of causing the title to be taken by the entireties and with the fraudulent purpose of refusing to make the deed or will so that the whole of said real estate upon her death would vest in appellees; that Elizabeth survived her husband but did not, either by will or deed, vest the title, or any part thereof, in appellants, but

that instead, she by deeds purported to convey the whole of such real estate to appellees; that said deeds from Elizabeth to appellees were in fact delivered prior to her death and that, upon her death intestate, the legal title to said real estate vested in appellees; that by reason of the above facts, Elizabeth, upon the death of her husband, took the title of the real estate in trust for appellants and appellees, each of whom it is alleged is the owner of an undivided one-sixth.

It also alleges that after the purchase of said real estate, Jacob purchased another tract of land in the city of Peru, he paying the entire consideration therefor; that the title thereto, at the request and suggestion of Elizabeth, was taken in their joint names upon the same agreement on the part of Elizabeth as hereinbefore set out concerning the first tract of land; that, in making said last contract, said Elizabeth had the same fraudulent intent and purpose as is alleged with reference to the first tract of land. It also alleges that she fraudulently failed and refused to execute a deed or make a will in accordance with her said agreement.

From a judgment in favor of appellees, appellants appeal and have assigned as error the overruling of their motion for a new trial, their specific contentions being that the decision of the court is not sustained by sufficient evidence, and that it is contrary to law.

The first wife of Jacob Betsner, mother of appellants, died in 1863. In 1867, Jacob married said Elizabeth, by virtue of which marriage appellees were born. Jacob died intestate in 1900, and Elizabeth died intestate in 1921. They were of German parentage, and for many years owned and operated a grocery store and saloon in Peru. Both worked in the store, although it appears from the evidence that Mrs. Betsner did most of the buying and selling of goods for and in the store. John

Fitzgerald, a former husband of appellant Elizabeth Fitzgerald, testified that while he was working in the grocery store in 1878, he overheard a controversy between Mr. and Mrs. Betsner, in the course of which, Mr. Betsner said to his wife, "You promised me when I put that property half in your name and half in mine that you would see that all the children had an equal share after you died, but now you are trying to throw me out. I believe you will cheat the children out of their share." That Mrs. Betsner said: "No, Jacob, when I give my promise I mean to keep it, because I know that God would punish me in heaven if I did not do it." That on another occasion, when they were quarreling, he said to her, "I gave you a half interest in the Main street property, and then went and bought the Grant street property for you, and you promised me that if I did do that, you would give it to my children and your children when you died, and that they would all get an equal share of the property, yours and mine jointly, and everything would be divided equally among the children, both your property and the joint property." and she said, "You needn't be afraid of that. I gave you my promise that I would hold the property as long as I lived with the understanding that Johnny and Lizzie (appellants) would not be able to throw me out of my home. I gave you my promise that there would be an equal division at the end of my life. I gave you that promise and intend to keep that promise." That, on another occasion, he heard Mr. Betsner tell Elizabeth he had bought the second tract of land referred to in the complaint for her to make her equal with him in all the property, provided she divided all their joint property among all the children at the time of her death.

John J. Fitzgerald, a son of appellant Elizabeth, testified that, on one occasion when he was staying at his

grandfather's home and working in the store, he heard a conversation between his grandfather and said Elizabeth in which the grandfather said, "You always promised me when I bought the property and made a joint deed that when we were dead, the estate should be equally divided among the children," and that Elizabeth said, "I certainly mean to keep my promise, but I don't want them here now. After I am dead, they have a perfect right and all my promises will be kept."

Jacob Betsner and his wife Elizabeth were hard working people. There is evidence to the effect that Jacob at times drank intoxicating liquor, but there is no evidence to justify an inference that he drank to any great excess or that Elizabeth exerted any undue influence over him.

Appellants contend that the direct and positive evidence is that said Elizabeth procured the title to the real estate in question to be taken in the name of herself and husband by the entireties under the promise that, if she outlived him, she would make provision before her death so that all of the children of said Jacob by his first and last marriages would, upon her death, share equally in said real estate. Appellants expressly state that their claim to an interest in the real estate is not based on an express trust, nor on a resulting trust. Their contention is that, under the facts, a constructive trust was created in favor of themselves and appellees.

In *Stringer* v. *Montgomery* (1887), 111 Ind. 489, 12 N. E. 474, a parol trust had been fully executed by the trustee by making a deed and surrendering possession to the beneficiaries of the trust, and it was held an action could not thereafter be maintained by the trustee to regain the land. In *Caldwell* v. *Ulsh* (1916), 184 Ind. 725, 112 N. E. 518, the purchase money had been paid by one person, and the title taken in the name of

another, without the knowledge of the person paying the money.

Appellants mainly rely on *Ransdel* v. *Moore* (1899), 153 Ind. 393, 53 N. E. 767, 53 L. R. A. 753. The facts in that case are in substance as follows: Mrs. Moore, having neither father, mother, nor children, entered into a parol agreement with her prospective husband that the title to certain real estate belonging to her would vest in her brothers. On her death-bed, she requested her husband to procure an attorney to prepare a deed or will to carry out such agreement. The husband failed to do so, but promised her he would hold the title in trust for her brothers, and would see that the title was properly vested in them. Soon after her death, he called the brothers together and offered to convey the real estate to them in accordance with the trust, but instead, it was agreed in a writing, prepared by the husband and signed by the brothers, that the husband should continue to hold the land in trust for them, and undertake to find a purchaser therefor and divide the proceeds among them. He afterwards mortgaged the land to secure a loan and divided the proceeds thereof between the brothers and, in a letter to one of the brothers, admitted the trust and referred to the written agreement, and died before executing the trust. It was there held that the facts created a trust and that the writings were sufficient to establish and enforce the same. Mrs. Moore, under the facts in that case, created a trust. The trust so created by her, although not in writing was not void, but, as was said by the court, it "could not be established except by the proper evidence in writing." There was, however, in that case, a writing signed by the trustee sufficient to prove and establish the trust.

And the Supreme Court, in *Richards* v. *Wilson* (1916), 185 Ind. 335, 370, 112 N. E. 780, after citing

*Ransdel* v. *Moore, supra,* said: "Ordinarily the written evidence of an express trust in land which will satisfy the statute may come from the grantor, the one who intends that a trust shall be created for a certain beneficiary, or from the trustee, the grantees to whom the land is conveyed for the purpose of the trust, but not from the *cestui que trust*. 3 Pomeroy, Eq. Jurisp. (3d ed.) §1007."

A review of all of the authorities cited by appellants would needlessly extend this opinion. We have given each of them a careful consideration, and like those heretofore referred to, they are readily distinguished from the instant case.

*Westphal* v. *Heckman* (1916), 185 Ind. 88, 113 N. E. 299, was an action by the appellees therein to enforce an alleged constructive trust in certain real estate which their father, a few days before his death, had conveyed to appellant, who was a brother of appellees. The court, after referring to §2969 R. S. 1881, §13442 Burns 1926, which provides: "No trust concerning lands, except such as may arise by implication of law, shall be created, unless in writing signed by the party creating the same, or by his attorney thereto lawfully authorized in writing," at page 96, said: "In applying this statute, the courts have universally held that an express parol trust cannot be impressed upon lands conveyed by deed absolute on its face. * * * Constructive trusts do not fall within the provisions of this statute, but are excluded therefrom by the exception of such trusts as may arise by implication of law. A constructive trust arises in cases where the transaction involved is tainted by fraud, actual or constructive. In such cases, in order to prevent the wrongdoer from reaping a benefit from his fraud, a court of equity will construct a trust such as equity and good conscience requires in order to do justice to the parties affected by the fraudulent trans-

action. In such cases, the court does not act upon and enforce parol agreements to hold land in trust as the primary thing. It is the fraud or undue influence connected with the original transaction which justifies the court in constructing a trust and holding the wrongdoer responsible as a trustee *maleficio.* * * * If the fraud is inherent in the transaction which results in the execution of the deed, such fraud renders the whole contract, including the deed, voidable. When fraud is shown in such a case, the court will not enforce the contract as made, but it will set aside the contract and deed when such a course will meet the ends of justice. If the ends of justice cannot be attained by setting aside the deed, a court of equity will suffer the title to rest in the fraudulent grantee as a trustee *maleficio,* and such a trust will be constructed by the court as will subserve the ends of justice and fair dealing. It thus appears that the trust which is enforced is not, in theory at least, the parol trust attempted to be made by the parties, but it is a constructive trust created by the court to meet the emergency of the situation arising out of the fraud." And, after stating that the facts showed that at the time the deed in question was executed, the son knew the father intended the real estate described therein should go to him and his two sisters, and that he had agreed with his father to hold the land in trust for himself and his two sisters, said: "This agreement rested in parol as there is no finding that it was ever reduced to writing as part of the deed or otherwise, and it does not appear that anything was omitted from the deed which was intended to be embodied in the writing. To enforce this agreement would be to impress a trust created by parol upon a deed absolute on its face. A constructive trust cannot be declared unless the facts found are sufficient to show actual or constructive fraud. The mere fact that appellant refused

to carry out the contract made with his father cannot surely constitute fraud, any more than a failure to carry out any other contract would amount to a fraud."

Appellants concede that if the statement last quoted is the law, this cause must be affirmed. They contend, however, that this statement is *obiter*, and should

1, 2. be disregarded. This contention, in our judgment, cannot prevail. The statement, as we view it, was germane to the subject under discussion, and correctly states the law on the subject, and is decisive of this appeal. A constructive trust arises wholly from fraud. Pomeroy, Eq. Jurisp. (3d ed.) §1055(1). "It has its roots in fraud, actual or constructive, which constitutes an essential ingredient." *Terry* v. *Davenport* (1916), 185 Ind. 561, 112 N. E. 998. And we add the fraud must be in the inception.

The burden of establishing fraud on the part of Mrs. Betsner was on appellants. The court found against them on this issue, and we cannot say as a mat-

3, 4. ter of law that the finding of the court is not sustained by the evidence. There was no error in overruling the motion for a new trial.

Judgment affirmed.