VANCE ET AL. *v.* GROW ET AL.

[No. 26,459. Filed June 15, 1934.]

*Gochenour & Graham* and *Brubaker & Rockhill,* for appellants.

*Kitch & Kitch, H. V. Lehman,* and *Allan Widaman,* for appellees.

ROLL, J.—This was an action begun by appellants' complaint in two paragraphs, to which demurrers were filed and overruled, with general denials closing the issues. Special findings were rendered on request with two conclusions of law thereon. The error properly presented is error in each of the conclusions of law. The conclusions were: (1) "The court now concludes the law is with the defendants," (appellees) and (2) "That the plaintiffs (appellants) should take nothing in this suit, and that the defendants should recover their costs herein."

The special findings disclose that—Sarah Shultz, a short time (8 months) before her death on July 8, 1930, at the age of 69 years, made a will leaving all her property to appellee Helen Grow, not related in any way to her but who had lived with Sarah Shultz since she

was five years old, except three years from 1926 to 1929; that there were four living brothers and sisters of Sarah Shultz (the appellants here) ; that Helen Grow returned to the Shultz home in September of 1929, that the will was made November 9, 1929, that on June 24, 1930, about one o'clock in the morning, Sarah Shultz, mortally ill with cancer, said she was not ready to die and requested that the appellants and Helen Grow be called to her bedside; that they were summoned and came from their respective houses and with Helen Grow and Ruby Rhoades gathered around her bedside. Then, in the words of the findings, ". . . The said Sarah Shultz then requested every person to leave the room except the defendant Helen Grow and the plaintiffs Emma Vance, Melissa Snoke, Calvin Thompson, and Samuel Thompson. All persons in said room except the above-named five persons then left and went into an adjoining room, the door between said two rooms being left open."

"8. The said Sarah Shultz then stated to Helen Grow, Emma Vance, Melissa Snoke, Calvin Thompson, and Samuel Thompson that she had made a will and that she had never told any of them of it; the said Sarah Shultz then stated that she wanted the said Helen Grow to have the home farm upon which she (Sarah Shultz) lived; that she wanted the said Helen Grow to have all of the household goods and furniture and fixtures in the house on said farm; that she wanted the said Helen Grow to have the Dodge automobile and all of the live stock, implements, and personal property on and about said farm; that she wanted enough money taken from her other property to paint the buildings and repair the fences on said farm. That out of her other property she wanted all of her debts and funeral expenses paid; that she wanted her nephews, Perry Metzger, Clarence Metzger, and Sherman Metzger,

each to have the sum of two hundred dollars. That she wanted the forty acres of land which she owned, other than the said home farm, together with all the remainder of her property, including her moneys and bonds, to go to the plaintiffs in this cause, Emma Vance, Melissa Snoke, Calvin Thompson, and Samuel Thompson. That the plaintiff Calvin Thompson repeated the above statements, made by the said Sarah Shultz as to the disposition of her property, and asked the said Sarah Shultz whether that was correct, and she said it was. The said Sarah Shultz then asked the defendant Helen Grow, who stood at the head of her bed, but not in a position where the said Sarah Shultz could see her, whether she would do as she (Sarah Shultz) had requested, to which the defendant Helen Grow replied she would."

"9. That later in the morning of said June 24, 1930, the defendant Charles Wise came to the home of Sarah Shultz and stated to the plaintiffs that about a week before that date the said Sarah Shulz stated to him that she desired to change her will, and that she had sent the said Wise to the person who had its custody for the purpose of obtaining said will, and that said custodian refused to let him have it, and said the will was just as it should be. That he was unable to obtain said will. That the said Wise further said to the plaintiffs that the said Sarah Shultz wanted him, the said Wise, to paint the buildings and repair the fences on said home farm, but that he could not do that."

"10. The court further finds that the defendant Helen Grow has refused to carry out the request made by the said Sarah Shultz, and is claiming to be the owner of all of the property, both real and personal, of the said Sarah Shultz, deceased, remaining after the payment of her debts."

"11. It is further found by the court that a close and

confidential relation existed between the said Sarah Shultz and the defendant Helen Grow. That on June 24, 1930, at the time when the plaintiffs in this action and the defendant Helen Grow were at the bedside of the said Sarah Shultz, she, the said Sarah Shultz, relied upon all of the parties there present; that they, and each of them, would carry out the request that she had there made, as set forth in the finding of facts herein. And that she relied upon those requests being carried out until she died. That the said Sarah Shultz did not change her said will or destroy it to modify it or revoke it."

"12. It is further found that the defendant Helen Grow, on the said June 24, 1930, at the time that the plaintiffs and the defendant Helen Grow were at the bedside of the said Sarah Shultz, did not then and has not at any time since had any intention of carrying out the request made by the said Sarah Shultz."

"13. That on the said 24th day of June, 1930, at the time the plaintiffs and the defendant Helen Grow were at the bedside of the said Sarah Shultz, she, the said Sarah Shultz, was of sound mind."

Upon these findings and others incidental the court stated the conclusions of law set out above.

Appellants present the question, whether under the facts found by the trial court as above set out, the court should declare a constructive trust, in favor of appellant. They assert the affirmative of this proposition and cite many cases in support of the same. Among the cases cited is the case of *Ransdel* v. *Moore* (1889), 153 Ind. 393, 53 N. E. 767, 53 L. R. A. 753. We have examined this case with much care and find no fault with the holding as there pronounced. We are, however, unable to agree with appellants that this case is decisive of the question here presented in their favor. The law as announced in that case supports the position taken by

appellees in this case. It might be well to review the facts in the Ransdel case and compare them with the facts in the case at bar.

In the Ransdel case, one Elizabeth Rodgers, sister of appellants, was the owner of certain real estate in Clinton County, Indiana, as well as real and personal property in Boone County; that in 1876 said Elizabeth A. Rodgers became engaged to marry one Willis E. Moore, a widower with three children by a former marriage, who were the appellees therein; that Elizabeth A. Rodgers was a widow, without children or their descendants living, and her father and mother both dead; that she greatly desired that a large portion of her property should, at her death, vest in her brothers, which fact was made known to Willis E. Moore before their marriage, and agreed to between them that title to the Clinton County land should, either by will or deed, be vested in her brothers. That afterwards they were married, had no children; that in 1894 said Elizabeth became sick and believing she was going to die requested her husband to procure an attorney or some other competent person to make and prepare a deed or will to carry out her purpose and wish to vest title to her real estate in appellants; that she was of sound mind but physically unable to leave the house; that her husband promised to secure such a person, but he did not; she constantly grew worse, and again she called her husband to her bedside and as a last request, repeated her former statement, and again he postponed her, telling her that she was then unable to make a will, but to rely on him and that he would see that her brothers should have said real estate, in case she should die without having made a will or deed; that in case she should die without having made a will or deed to them, he would receive the title to said land in trust for them and see that the title thereto was properly vested in them; that she had confi-

dence and faith in her husband and acquiesced in said statements and relied upon them, and shortly thereafter died without making a will or deed or otherwise conveying said real estate to appellants except as above set out; that soon after her death Willis E. Moore, with the intention of carrying out the wishes of his deceased wife and of manifesting the trust imposed upon him called the three brothers together for the purpose of vesting the title to the real estate in them by executing to them a deed for the same. At this meeting it was suggested and agreed, for the reasons set out, that Mr. Moore should continue to hold the title in trust for them and manage the same and as soon as possible find a purchaser and sell the same and divide the proceeds among them. This agreement was evidenced by a written agreement which was signed and delivered to appellants and is set out in full in the opinion. Afterwards said Moore executed two several mortgages on this real estate, and divided the proceeds thereof as set out in the agreement. Accompanying the check to one of the appellants was a letter from Mr. Moore wherein he again acknowledged the trust and the agreement. That afterwards Willis E. Moore died intestate, and while so holding the said real estate in his name; that he never renounced or denied his trust but at all times admitted the same. The appellees herein are the children of said Willis E. Moore and are claiming the real estate as his heirs.

The first part of the opinion is devoted to the question of what evidence is sufficient to establish an express trust, and to the question of the consideration to support the trust, as it was argued that the trust was executory. It was held that the evidence was sufficient to establish an express trust and the trust should be enforced; and (2) that even though the express trust shown by the writings was not perfectly created, and was executory so far as the trustee was concerned, it was enforceable,

because it was in fact supported by sufficient consideration. The next point considered by the court was the sufficiency of the fifth paragraph of complaint, and it is the discussion of the court upon this point that appellees rely for support of their proposition. It will be noted that the court states very clearly the question presented as to the fifth paragraph of complaint on page 407 as follows:

> "The question presented by the demurrer to the fifth paragraph of complaint is, whether or not a trust can be enforced against a man who, when his wife is on her death bed, *by his promises prevent* a deed or will or other writing being made by her in favor of her brothers, and on the death of the wife the real estate intended for the brothers is inherited by said husband, he being her only heir at law." (Our italics.)

The court then follows the statement of the question by a statement of the law in such cases. This statement is as follows:

> "The rule established by the authorities is that when an heir or devisee in a will *prevents* the testator from providing for one whom he would provide *but for the interference* of the heir or devisee, such heir or devisee will be deemed a trustee, by operation of law, of the property, real or personal, received by him from the testator's estate, to the amount or extent that the defrauded party would have received had not the intention of the deceased been interfered with." (Our italics.)

In quoting from other authorities to support the above rule of law the court quotes from many cases, but at the close of the opinion it says:

> "We are not required to approve all the cases cited nor all that is said in many of them in order to sustain the fifth paragraph of complaint."

Among the cases cited and quoted is the case of *Cox* v. *Arnsmann* (1881), 76 Ind. 210, also cited and relied

upon by appellants. We have examined this case and find that the facts in that case are so different from the facts at bar that it is of no assistance to appellants' position. We think that case was correctly decided upon the facts as they appear in the opinion.

The facts in the present case differ from the facts in the cases cited and reviewed by Judge Monks in the Ransdel case in this, that in the cases reviewed, the alleged trustee was active either in having a will or deed executed or in preventing the execution of a will or deed of conveyance by statements or promises. For instance in the case of *Chamberlain* v. *Chamberlain* (1678), 2 Freem., ch. 34, 2 Eq. Cas. Abr. 43, where a father, being about to change his will lest there might not be assets enough besides the lands settled upon his son to pay certain legacies to his daughter, was assured by his son that he would pay them in case of a deficiency of assets, if the will were not changed, the son was held to his promise. Also in *Thynn* v. *Thynn* (1684), 1 Vern. 296, a son promised the executrix that if she would obtain a new will naming him as executor he would hold it in trust for her, which she did. The court held that there was an enforceable trust.

In the case at bar Helen Grow did nothing, nor said nothing that induced the execution of the will by Sarah Schultz nor did she do anything or say anything that prevented her from changing her will. Neither is there any finding that Sarah Shultz desired to change her will in any particular. These facts present quite a different picture from the *Ransdel* v. *Moore, supra,* and the cases cited and reviewed therein. We think the case falls within the rule as announced in the *Ransdel* v. *Moore* case, and the well considered case of *Westphal* v. *Hickman* (1916), 185 Ind. 88, 113 N. E. 299. In this case the father Henry Westphal, a few days before his death, deeded to his son all of his real estate to the ex-

clusion of his daughters. At the time the deed was executed, the son knew that the father intended that the real estate described therein should go to him and his two sisters, and he agreed with his father to hold the land, which the deed conveyed to him absolutely, in trust for himself and appellee. This agreement rested in parol as there was no finding that it was reduced to writing as part of the deed or otherwise, and it does not appear that anything was omitted from the deed which was intended to be embodied in the writing. The court said, that:

"To enforce this agreement would be to impress a trust created by parol upon a deed absolute on its face."

The court states the following rule of law:

"A constructive trust cannot be declared unless the facts found are sufficient to show actual or constructive fraud."

Then the court commented:

"The mere fact that appellant refused to carry out the contract made with his father cannot surely constitute fraud, any more than a failure to carry out any other contract would amount to a fraud."

Under §13442, Burns Ann. St. 1926, §56-601, Burns 1933, §14734, Baldwin's 1934, an express trust in land cannot be created by parol, and the enforcement of an oral agreement to hold land in trust would nullify the statute. If the trust does not exist, then the refusal to carry it out would not constitute either actual or constructive fraud, and proof of the existance of a parol trust is the thing which the statute forbids.

Appellants contend that there was a confidential relation existing between Sarah Shultz and Helen Grow, and that Sarah Shultz relied upon the oral promise of Helen Grow to carry out her desires. The *Westphal* v. *Hickman* case, *supra,* says that

the fact that the father reposed confidence in his son is not enough to show that fraud was practiced. The court further said that,

"It must further appear that the grantee, *at* or *before* the time of such conveyance, abused the confidence reposed *in such a way* as to improperly influence the grantor, or to mislead or overreach him, and thus to obtain an unconscionable advantage for himself; or the relationship shown between the grantor and the grantee must be of such a character that the exercise of such improper influence can be presumed as a matter of law." (Our italics.)

It does not appear nor is it contended that Helen Grow exercised undue influence over Sarah Schultz in securing the execution of the will nor in preventing her from revoking or changing the same; neither is the relationship such as the law will presume such an influence. So the question of confidential relationship is out of the case.

Appellants quote the following in their reply brief from the case of *Westphal* v. *Heckman, supra,* as supporting their contention.

"The finding does not show that at the time the conveyance was made the grantee intended to obtain the title to the land by means of the promise, and then to hold it for his own use and benefit, and that he then had the formed intention of not carrying out this promise. Such facts if found, would show a fraud inherent in the transaction which would render it voidable from its inception, and which would be sufficient to justify a court of equity in annulling the whole contract and in declaring a constructive trust."

Appellants argue that this rule should be decisive of this case in their favor, for the court found by finding No. 12, that Helen Grow, "Did not then and there and has not at any time since had any intention of carrying out the request made by said Sarah Shultz." They say that in the Westphal case, the missing element is the,

"formed intention at the time of not carrying out the request." Appellants overlook another element in the quotation from the Westphal case above set out, and that is, that part contained in the first part of the statement, namely that the grantee *obtained title to the land by means of the promise.* (Our italics.) So in the case at bar, if Helen Grow, had obtained title to the land in question, *by means of her promise* with the formed intention of not carrying out that promise, then a court of equity could say that there was fraud, and the final refusal to carry out the request would have the effect to consumate the fraud. But no such state of facts exists in this case. Helen Grow did not obtain title to the lands here in question by means of a promise to hold the lands in trust, and therefore appellants are not within the rule above stated in the Westphal case, *supra.*

As we view this case, the facts found do not show any fraud or undue influence inherent in the transaction, but only the refusal of Helen Grow to carry out an oral contract made long after the execution of the will, which refusal is not such fraud that will justify the court in declaring a constructive trust.

It was said in the case of *Moore* v. *McClain* (1918), 68 Ind. App. 102, 119 N. E. 258:

> ". . . the fraud out of which the court can construct a trust must be at the inception of the transaction."

And as authority for this statement the court cites *Westphal* v. *Williams* (1914), (Ind. App.), 107 N. E. 91, and *Alexander* v. *Spaulding* (1902), 160 Ind. 176, 66 N. E. 694. See also the case of *Ragsdale* v. *Ragsdale* (1890), 68 Miss. 92, 8 So. 315, where the court lays down the proposition:

> "That one who is active in preventing a testator from making an intended provision by his will for another and where, but for such intervention, the

intended provision would have been made, will be held to be a trustee of any devise to himself, to the extent it would have been for such other if it had not been intercepted by him, and will be compelled to respond to the claim of the intended beneficiary."

This would constitute fraud from which the court would construct a trust as a matter of law. We cannot sanction the doctrine that an enforceable trust will arise from the mere breach of an oral promise, even made at a death bed scene. There must be conduct influential in producing the result, and but for which such result would not have occurred, amounting in a court of equity to fraud, to save it from the operation of the statute of fraud.

The question here presented is so clearly stated and decided in the cases herein cited that a further discussion is unnecessary.

We find no reversible error in this case. Judgment affirmed.