ORVAL D. HUNTER, ADMINISTRATOR ET AL. *v.*
IVA HUNTER ET AL.

[No. 568A97.  Filed June 14, 1972.  Rehearing denied July 27, 1972.
Transfer denied March 26, 1973.]

*Seal & Seal,* of Washington, *James B. Sparks,* of Bloomfield, for appellants.

*Ferguson, Berry, Ferguson & Bridges,* of Bloomington, for appellees.

BUCHANAN, J.—STATEMENT OF THE CASE AND FACTS —This is an appeal from a judgment imposing a constructive trust on certain real estate held by defendant-appellant Orval D. Hunter (Orval) as Administrator of the Estate of Ray E. Hunter (Ray) in favor of plaintiff-appellees Iva Hunter and Frankie Ferguson (Iva and Frankie), sisters of Ray, on the theory of violation of a confidential or fiduciary relationship.

In April of 1956, Ray, Iva, and Frankie became equal co-owners of the Hunter family farm (the farm) by reason of their mother's death. In the early part of May of 1956, Iva and Frankie, without consideration, conveyed their interests in the farm by warranty deed to their brother Ray. Our examination of the record indicates no evidence of any promise or representation made by Ray to his sisters at the time of the conveyance nor is there evidence indicating the reasons for the conveyance or the conduct of Ray with respect thereto. Apparently at all times the parties were adults and under no disabilities.

After the conveyance, neither Iva nor Frankie shared in the responsibilities of the management and operation of the farm—presumably Ray did operate the farm and received the benefits therefrom.

In May of 1966, Ray wrote but did not execute what purported to be a holographic will which devised the farm to Iva and Frankie upon his death. Subsequent to the drafting of this writing there was evidence that Ray stated a desire to keep the farm in the family, and that on his death he wanted the farm to go to Iva and Frankie. During his lifetime, however, Ray did not convey the farm to Iva and Frankie nor did he do so by will.

Ray married near the end of May of 1966, and died intestate a few weeks later on June 5, 1966. His widow inherited the farm as his next of kin.

Iva and Frankie then brought this action to impose a constructive trust on the farm alleging, inter alia, that in return

for the conveyances Ray would manage the farm for their mutual benefit and subsequently would either reconvey to Iva and Frankie or devise it to them by will; further, it was alleged that Ray made this promise knowing that it was false with the intent to deceive them and to induce them to execute deeds to the farm without any consideration for the ostensible purpose of Ray's convenience in management of the farm; and that they reposed the utmost trust and confidence in Ray and relied on his false promise to their detriment.

After trial on June 19, 1967, the trial court entered judgment for Iva and Frankie on September 21, 1967, and made the following Findings of Fact and Conclusions of Law:

## "FINDINGS OF FACT

"1. Ray E. Hunter, deceased, was the only brother of Iva Hunter and Frankie Ferguson, Plaintiffs.

"2. That Iva Hunter and Frankie Ferguson were the only sisters of Ray E. Hunter, deceased.

"3. That because they were brothers and sisters and [sic] confidential relationship existed between Ray E. Hunter on the one hand and Iva Hunter and Frankie Ferguson, on the other.

"4. That on April 27, 1956, Ray E. Hunter, Iva Hunter, and Frankie Ferguson became equal co-owners of an undivided interest of the Hunter Family Farm, situate in Greene County, Indiana.

"5. That in the early part of May, 1956, Iva Hunter and Frankie Ferguson conveyed their undivided interest in the Hunter Family Farm to Ray E. Hunter.

"6. That neither Iva Hunter or Frankie Ferguson shared in the responsibility for or the benefit of management and operation of the Hunter Family Farm after they conveyed their interest to Ray E. Hunter.

"7. That neither Iva Hunter nor Frankie Ferguson received any consideration whatsoever for their conveyance of the Hunter Family Farm to Ray E. Hunter.

"8. That Ray E. Hunter died intestate in residence at the Hunter Family Farm on June 5, 1966.

"9. That Ray E. Hunter did not during his lifetime reconvey the Hunter Family Farm in Greene County, Indiana, to Iva Hunter and Frankie Ferguson.

"10. That Iva Hunter and Frankie Ferguson did not receive the Hunter Family Farm by inheritance upon the death of Ray E. Hunter because Ray E. Hunter was survived by his wife, Hilda Hunter.

"11. That Ray E. Hunter executed a holographic will on May 18, 1966.

"12. That said holographic will directed conveyance of the Hunter Family Farm in Greene County, Indiana, to Iva Hunter and Frankie Ferguson.

"13. That subsequent to execution of the holographic will Ray E. Hunter stated a purpose to keep the Hunter Family Farm in Greene County, Indiana, in the family.

"14. That because he was their brother, did receive the Hunter Family Farm from his sisters without paying any consideration, did state a purpose to keep the Hunter Family Farm in the family, and did attempt to will the Hunter Family Farm to his sisters, Ray E. Hunter did promise prior to receiving conveyance of their interest in the Hunter Family Farm, to reconvey the Hunter Family Farm to Iva Hunter and Frankie Ferguson.

"From the foregoing facts, the court concludes:

## "CONCLUSIONS OF LAW

"1. That the law is with the Plaintiffs.

"2. That Ray E. Hunter's failure to reconvey the Hunter Family Farm in Greene County, Indiana, to Iva Hunter and Frankie Ferguson was a constructive fraud of the rights and interests of Iva Hunter and Frankie Ferguson.

"3. That a constructive trust may be created whether the fraud existed at the outset of the transaction or arose by the later conduct of the party.

"4. That a constructive trust of lands will be raised by the court in favor of the original grantor, where the original grantor has been defrauded by the original grantee, and received no consideration for the original conveyance.

"Let judgment be entered accordingly.

"Dated this 21st day of Sept., 1967."

Orval then filed a Motion for a New Trial. The court heard argument on the Motion and entered a second judgment, again for Iva and Frankie, which compelled Orval to reconvey the farm to Iva and Frankie. Orval now appeals, alleging as

error that the decision of the court was not sustained by sufficient evidence, was contrary to law and various errors of law occurring at the trial.

ISSUE—Because of the result reached in this case there is no necessity of considering the assigned errors occurring at the trial. We deem the issue to be:

Was there sufficient evidence to support the trial court's finding that a constructive trust was created when Iva and Frankie conveyed their interests in the farm to Ray?

Orval contends that there is no evidence of fraud or constructive fraud perpetrated by Ray. Similarly, there is no evidence of record that Ray made a promise to Iva and Frankie at the time of the conveyance to reconvey the farm to Iva and Frankie during his life or after his death. Consequently, Orval argues that the facts are not sufficient to create a constructive trust.

Iva and Frankie take the position that there was a confidential relationship between Ray, on the one hand, and Iva and Frankie, on the other. This relationship, combined with the conveyance without consideration and Ray's purported promise to reconvey at a later date, was sufficient to give rise to constructive fraud.

DECISION—It is our opinion that the evidence of record was insufficient to support the imposition of a constructive trust on the farm in favor of Iva and Frankie. Further, findings of fact 3, 11 and 14 and conclusions of law 1, 2 and 3 are clearly erroneous and No. 4 is questionable.

The use of the constructive trust as an equitable device for achieving justice has not been neglected in Indiana. This interesting area of historic equitable jurisdiction has often been treated by our Indiana courts. Therefore we see no need to exhaustively analyze or review the cases but will restate a few fundamental principles, particularly those that dispose of this case.

A constructive trust is a fiction of equity, devised for the

purpose of making equitable remedies available against one who through fraud or other wrongful means acquires the property of another. *Brown* v. *Brown* (1956), 234 Ind. 563, 135 N. E. 2d 614; *Koenig* v. *Leas* (1959), 240 Ind. 449, 165 N. E. 2d 134. See generally: 5 Scott, On Trusts 3410 *et seq.* (3rd ed. 1967). Trusts are thus constructed by the court irrespective of the intent of the parties, in defiance of the statute of frauds to uphold justice and avoid unjust enrichment. The underlying principle is that the statute of frauds may not be invoked to aid in the perpetration of a fraud. *Ransdel* v. *Moore* (1899), 153 Ind. 393, 53 N. E. 767; *Cary* v. *Davenport* (1915), 185 Ind. 561, 112 N. E. 998; *Alexander* v. *Spaulding* (1902), 160 Ind. 176, 66 N. E. 694.

Indiana courts have limited the imposition of a constructive trust to instances where there is actual fraud or there exists a breach of a duty arising out of a confidential or fiduciary relationship which necessitates the presumption that fraud be inferred. The breach of duty necessary to create a constructive trust was described by the court in *Brown* v. *Brown, supra,* at page 568:

> " 'a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence or to injure public interests. Neither actual dishonesty nor intent to deceive is an essential element of constructive fraud.' *Daly* v. *Showers* (1937), 104 Ind. App. 480, 486, 8 N. E. 2d 139."

If the confidential relationship is found to exist, then fraud can be presumed or inferred due to a violation or breach of the fiduciary relationship. One occupying a confidential or fiduciary relationship[1] of trust with another is bound to abstain

---

1. "In general, a confidential relationship, or fiduciary relationship, the two terms being ordinarily used interchangeably, within the meaning of the rule that a constructive trust arises from the abuse or violation of such a relationship, exists wherever confidence is reposed on one side and there is a resulting superiority and influence on the other." 89 C.J.S. *Trusts* § 151, 1054, 1055.

from placing himself in an inconsistent position tending to interfere with the execution of his duties. *Hitchcock* v. *Cosper* (1904), 164 Ind. 633, 73 N. E. 264. 5 Scott, On Trusts § 462, 3412.

Although the existence of a confidential relationship depends upon the facts of each case, it can be generally stated that a confidential relationship exists whenever confidence is reposed by one party in another with resulting superiority and influence exercised by the other. *Shapiro* v. *Rubens* (7th Cir. 1948), 166 F. 2d 659. Not only must there be confidence by one party in the other, the party reposing the confidence must also be in a position of inequality, dependence, weakness, or lack of knowledge. *Koenig* v. *Leas, supra; Koehler* v. *Haller* (1915), 62 Ind. App. 8, 112 N. E. 527. Furthermore, it must be shown that the dominant party wrongfully abused this confidence by improperly influencing the weaker so as to obtain an unconscionable advantage. *Westphal* v. *Heckman* (1916), 185 Ind. 88, 113 N. E. 2d 299.

While the mere existence of a family relationship is insufficient to raise a presumption of a confidential relationship, there are certain relationships between grantor and grantee in which the law may presume improper influence, such as, parent-child, husband-wife, or attorney-client. *Westphal* v. *Heckman, supra; Koenig* v. *Leas, supra.* Our Supreme Court, in *Westphal* v. *Heckman, supra,* had the following to say about the special relationships in which a confidential relationship would be presumed:

"There are certain legal and domestic relations in respect to which the law raises a presumption of trust and confidence on one side and a corresponding influence on the other. The relations of attorney and client, principal and agent, husband and wife, and parent and child belong to this class and there may be others. Where such a relation exists between two persons and the one occupying the superior position has dealt with the other in such a way as to sustain a substantial advantage, *the law will presume that improper influence was exerted and that the transaction is fraudulent.* * * *

"This so-called presumption, when indulged, arises out of relations which exist between the contracting parties regardless of any facts or circumstances having a tendency to show that a confidence was reposed by one of the parties and an influence gained by the other. Proof of the existence of such a relation between the parties establishes *prima facie* that *the dominant party* to such relation occupies a position of trust and confidence which he must not abuse." (Emphasis supplied).

*Westphal* is a leading Indiana case and along with *Shapiro, Koenig* and *Koehler, supra,* establishes the principle that in order for equity to construct a trust where no actual fraud exists, dominance by one party over the weaker party is the necessary hand-maiden of the confidential relationship. In the general class of cases where a constructive trust is built upon the existence of a confidential relationship we find none holding that the mere fact of family relationship necessarily produces a confidential relationship the abuse of which gives rise to a constructive trust. In *Westphal* the court refers to the attorney-client, principal and agent, husband and wife as confidential relationships where constructive trusts may be imposed, recognizing that "there may be others." See 89 C.J.S., § 151 Trusts, 1062 and 1063.

Typical is *Clark* v. *Clark*, 76 N. E. 2d 446, 398 Ill. 592, where the court held that a fiduciary relationship does not arise merely from the fact that parties are brother and sister, but depends on all facts; conveyance from sister to brother is not assumed to be fraudulent merely on account of the kinship. This same effect is *Saunders* v. *Visser* (1944), 20 Wash. 2d 58, 145 P. 2d 898, where the Washington Supreme Court said:

"The fact that a fiduciary relationship existed between respondent and her brother is not in itself sufficient to justify an inference of a breach of trust on his part."

See also *Johnson* v. *Clark* (1936), 7 Cal. 2d 529, 61 P. 2d 767.

Were it not so, family members could not convey real estate to each other without raising the presumption of a trust.

While no Indiana cases have come to our attention concerning conveyance of real estate involving brother and sisters giving rise to a constructive trust, the Indiana cases do require proof of dominance and reliance by the weaker party in order to find a confidential relationship to exist, otherwise fraud may not be presumed. *Shapiro; Koenig* and *Koehler, supra.*

Furthermore the Indiana cases have been reluctant to grant such a remedy as a constructive trust thereby affecting restitution to an injured party unless the evidence is clear and so convincing as to leave the mind well satisfied that such a trust exists. *Shapiro* v. *Rubens, supra; Edmondsen* v. *Friedell* (1928), 200 Ind. 298, 153 N. E. 89; *Tillars* v. *McConnell* (1895), 141 Ind. 670, 40 N. E. 689. The statute of frauds is not easily defeated. The mere violation of an oral promise made by the grantee of land to the grantor to reconvey the land back to the grantor does not create a constructive trust in the grantee absent some fraud or wrongdoing in procuring the conveyance. *Westphal* v. *Heckman, supra; Vance* v. *Grow* (1934), 206 Ind. 614, 190 N. E. 747; *Betsner* v. *Betsner* (1925), 84 Ind. App. 319, 151 N. E. 343; *Orth* v. *Orth* (1896), 145 Ind. 184, 42 N. E. 277; *Stein* v. *Stein* (1947), 398 Ill. 397, 75 N. E. 2d 869.

In considering the meager facts before us we must presume that the trial court's findings of fact are accurate unless we find them to be clearly erroneous. TR. 52(A).

For equity to fashion a trust of land conveyed by absolute deed so that the transaction is removed from the operation of the statute of frauds there must exist fraud or constructive fraud arising out of a confidential or fiduciary relationship where one party dominates a weaker party who reposes confidence in that dominant party. Remaining cognizant that the imposition of such a trust must be demonstrated by clear

and convincing proof we now turn to the state of affairs between Ray, Iva and Frankie.

Obviously there was no culpable conduct on Ray's part in terms of fraud or undue influence as there was no proof whatsoever of any of the circumstances or conduct of the parties surrounding the execution of the deeds to the farm. They were executed without consideration and beyond that the record is silent.

In Finding of Fact No. 3, the trial court stated that a confidential relationship existed between Ray, on the one hand, and Iva and Frankie on the other, because Ray and Iva and Frankie were brother and sisters. The holding of *Johnson* v. *Clark, supra,* and *Saunders* v. *Visser, supra,* shatter any contention that the brother-sister relationship is of itself sufficient to raise a confidential relationship. Moreover, such a confidential relationship may not even be presumed as there was no evidence that Ray was a dominant party in the brother relationship with some inequality, dependence, weakness, or lack of knowledge on the part of Iva and Frankie. Without the existence of dominance on one side and weakness on the other, we may not presume that improper influence was exerted by Ray and that the original conveyance by Iva and Frankie to Ray was wrongfully induced. *Westphal* v. *Heckman, supra.*

In Finding of Fact No. 11, the trial court stated that Ray *executed* a holographic will in May of 1966. This purported holographic will, however, was nothing more than a hand-written display of Ray's frustrated intention to devise the family farm to Iva and Frankie at his death. It was not properly attested by two competent witnesses and the instrument at most exhibited a dispositive state of mind having no bearing on any of the essential elements necessary to create a constructive trust. It could by no tortured reasoning be considered a sufficient writing to remove the transaction between these parties, whatever it was, from the operation of

the statute of frauds. If its admission in evidence was error, it was harmless. Rule TR. 61.

In Finding of Fact No. 14, the trial court finds that Ray promised prior to the conveyance by Iva and Frankie, to reconvey the farm to Iva and Frankie at a later date. The record does not reveal *any* evidence of such a promise. Had such a promise been made the case would still be within the rule of: *Westphal* v. *Heckman, supra; Vance* v. *Grow, supra; Betsner* v. *Betsner supra; Orth* v. *Orth, supra.*

Since the transcript is devoid of *any* evidence which would support the trial court's Findings Nos. 3, 11 and 14, it is our opinion that those findings are clearly erroneous.

Sufficient facts necessary to support a constructive trust was treated in *Hitchcock* v. *Cosper, supra:*

> "It is true that the trial court states in a special finding that the relation existing between the parties in reference to the plaintiff's money and her business affairs was, on her part, one of continuous trust and confidence in the defendant. A trust, however, is not shown by the mere allegation or statement that it exists. *The facts disclosing how the relation of trustee and cestui que trust arose in a particular case must be averred or stated.*" (Emphasis supplied.)

From the foregoing exposition of the law governing constructive trusts and our conclusion that findings of facts Nos. 3, 11 and 14, are clearly erroneous, it is a short and easy step to necessarily conclude that conclusions of laws Nos. 1, 2 and 3, are clearly erroneous and conclusion of law No. 4 is an irrelevant statement of a proposition of law having no bearing on the facts under consideration. The trial court's conclusion No. 3 "that a constructive trust may be created whether the fraud existed at the outset of the transaction or arose by the later conduct of the party" is not the law in Indiana. The fraud, actual or constructive, must exist at the time of the transaction, and subsequent fraud or unconscionable conduct will not give rise to a constructive trust. *Westphal* v. *Heckman, supra; Vance* v. *Grow,*

*supra; Betsner* v. *Betsner, supra;* 89 C.J.S. *Trusts* § 139, 1021, 1022, 1023. The court's conclusion of law No. 2 that Ray's failure to reconvey the farm to Iva and Frankie was a constructive fraud also has no support in the Indiana cases, as we have indicated above.

As self-appointed architects of a constructive trust Iva and Frankie have failed to supply equity with the materials of proof as to actual or constructive fraud necessary to construct such a trust.

From the record before us the most that could be said for Iva and Frankie is that they conveyed the farm to Ray without consideration and that he later displayed an intention to keep the farm in the family.

While "a constructive trust is the formula through which the conscience of equity finds expression,"[2] there are known bounds to that conscience. While it is of no solace to Iva and Frankie, Mr. Justice Frankfurter once remarked that, "There is not a legal remedy for every mischief in a democracy." If mischief there be, it must be *proved* within the established equitable guidelines.

Iva and Frankie having failed in their proof to construct a fraud or a confidential relationship from which fraud could be presumed, the trial court could not construct a trust for their benefit.

Therefore the judgment is reversed.

Sullivan, J., concurs; Sharp, J. (by designation), concurs; White, P.J., not participating.

NOTE.—Reported in 283 N. E. 2d 775.

---

2. So said Justice Cardoza in *Beatty* v. *Guggenheim Exploration Co.* (1919), 225 N.Y. 380-386, 122 N.E. 378.